**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MULTI ACCESS LIMITED, | |
| Plaintiff, | Civil Action No. 1:20-cv-07397-LJL |
| vs. | **MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS AMENDED COMPLAINT** |
| GUANGZHOU BAIYUNSHAN PHARMACEUTICAL HOLDINGS CO., LTD., *et al.*, | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...........................................................................................ii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 3

ARGUMENT ............................................................................................................. 6

    I.     GBP is not subject to this Court's personal jurisdiction. ....................................... 6

          A.     Legal standard under Rule 12(b)(2) ........................................................ 6

          B.     There is no general jurisdiction because GBP is not "at home" in New York. ..................................................................................................... 7

          C.     There is no specific jurisdiction because GBP has no relationship with New York. ................................................................................................ 8

                1.     None of the provisions of New York's long-arm statute apply to GBP. ............................................................................................. 9

                2.     The contacts of GBP's alleged "direct and indirect subsidiaries" or co-defendants are insufficient to confer personal jurisdiction over GBP itself. ................................................................................... 12

                3.     GBP's U.S. trademarks and participation in TTAB proceedings are insufficient to confer personal jurisdiction. ................................. 16

                4.     Because GBP has no relationship with New York, the exercise of personal jurisdiction is inconsistent with due process. ................. 18

    II.    The entire action must be dismissed because GBP is a necessary party that cannot be joined and is indispensable. ................................................................. 19

          A.     Legal standard under Rule 19 ............................................................... 19

          B.     GBP is a necessary party because the Court cannot afford complete relief between MAL and the remaining defendants, since GBP owns the trademarks that MAL seeks to adjudicate. .............................................. 20

          C.     GBP will be prejudiced if the case proceeds in its absence, and it will not be bound by any finding of infringement or order enjoining the use or registration of its marks. ....................................................................... 21

    III.    MAL's unjust enrichment claim is preempted in part by the Copyright Act. ...... 25

          A.     Legal standard under Rule 12(b)(6) ...................................................... 25

          B.     To the extent it relies on copyright, MAL's unjust enrichment claim is preempted. ......................................................................................... 25

CONCLUSION ........................................................................................................ 25

i

## **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Alcon Vision, LLC v. Lens.com, Inc.*,
No. 18-CV-407 (NG) (RLM), 2020 WL 4810778 (E.D.N.Y. Aug. 11, 2020) .......... 10, 17

Arquest, Inc. v. Kimberly Clark Worldwide, Inc.,
2008 WL 2971775 (S.D.N.Y. July 31, 2008) ........................................................ 15, 17

*Asahi Metal Industry Co. v. Superior Court*,
480 U.S. 103 (1987) ................................................................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 25

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
No. 18 CIV. 11913 (PAE), 2020 WL 7496342 (S.D.N.Y. Dec. 21, 2020) .................... 16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
1989 WL 87418, at *5 (N.D.N.Y. July 31, 1989), *aff'd,* 902 F.2d 194 (2d Cir. 1990) .... 15

*Beacon Enters., Inc. v. Menzies*,
715 F.2d 757 (2d Cir. 1983) .................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 25

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) .................................................................................. 9, 18

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) .................................................................................... 8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........................................................................................ 9, 12, 18

*Chizniak v. CertainTeed Corp.*,
2020 WL 495129 (N.D.N.Y. Jan. 30, 2020) .............................................................. 15

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) .................................................................................... 6

*CutCo Indus., Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986) .................................................................................... 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .............................................................................................. 6, 7

*Diaz v. Glen Plaid, LLC*,
No. 7:13-CV-853-TMP, 2013 WL 5603944 (N.D. Ala. Oct. 11, 2013) .............. 21, 23, 24

ii

*Dow v. Nat'l Conference of Bar Examiners*,
    No. 1:16-CV-264 (PKC), 2017 WL 74715 (E.D.N.Y. Jan. 6, 2017)................................ 6

*Earl v. Peverett*,
    1991 WL 33281 (S.D.N.Y. Mar. 7, 1991) ........................................................ 21, 22, 23

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
    807 F. Supp. 2d 732 (N.D. Ill. 2011) ....................................................................... 10, 17

*Egrandbuy, Inc. v. LEGO Juris A/S*,
    2016 WL 11744380 (C.D. Cal. Nov. 16, 2016)............................................................... 22

*Eragen Biosciences, Inc. v. Nucleic Acids Licensing, LLC*,
    447 F. Supp. 2d 930 (W.D. Wisc. 2006)......................................................................... 10

*Franklin v. Coloplast Corp.*,
    2019 WL 5307085 (N.D.N.Y. Oct. 21, 2019) ................................................................ 10

*Gallelli v. Crown Imps., LLC*,
    701 F. Supp. 2d 263 (S.D.N.Y. 2010).......................................................................... 12, 13

*Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*,
    786 F.2d 105 (2d. Cir. 1986)........................................................................................... 11

*Goldstein v. Pataki*,
    516 F.3d 50 (2d Cir. 2008).............................................................................................. 25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .......................................................................................................... 8

*Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*,
    742 F. Supp. 2d 446 (S.D.N.Y. 2010)............................................................................. 19

*Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*,
    2011 WL 7807548 (S.D. Fla. July 26, 2011)............................................................. 22, 23

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...................................................................................................... 6, 7

*Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar, S.A.*,
    196 F.R.D. 306 (E.D. Mich. 2000) ............................................................................ 22, 24

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)........................................................................... 6, 12, 13, 15

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998)............................................................................... 13

*Kaufhold v. Cyclopian Music, Inc.*,
    No. 10 CIV. 4588 DLC, 2010 WL 5094630 (S.D.N.Y. Dec. 14, 2010) ........................ 18

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)......................................................................................................... 12

*May Apparel Grp., Inc. v. Ava Import-Export, Inc.*,
    902 F. Supp. 93 (M.D.N.C. 1995) ............................................................................. 22, 24

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ............................................................................................... 19

*Netzer v. Continuity Graphic Assocs., Inc.*,
    963 F. Supp. 1308 (S.D.N.Y. 1997) ................................................................................. 25

*Now-Casting Economics, Ltd. v. Economic Alchemy LLC*,
    No. 18 CIV. 2442 (ER), 2019 WL 4640219 (S.D.N.Y. Sept. 24, 2019) ......................... 17

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) ................................................................................................. 6

*Revolution Distrib. v. Evol Nutrition Assocs., Inc.*,
    2012 WL 2368634 (D. Ariz. June 21, 2012) ................................................................... 22

*Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*,
    Case No. 4-CV-4819, 2015 WL 13019620 (S.D.N.Y. Sept. 21, 2015) ............................. 8

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994) ................................................................................................. 6

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ........................................................................................... 7, 8

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
    135 F. Supp. 3d 219 (S.D.N.Y. 2015), *aff'd sub nom. Tannerite Sports, LLC v.*
    *NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236 (2d
    Cir. 2017) ............................................................................................................................ 6

*United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    960 F.2d 1080 (1st Cir. 1992) ......................................................................................... 12

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................................................... 12

*Viacom Int'l, Inc. v. Kearney*,
    212 F.3d 721 (2d Cir. 2000) ....................................................................................... 19, 20

*Volkswagenwek Aktiengesellschaft v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d. Cir. 1984) ........................................................................................... 14

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................................................... 9, 18

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ........................................................................................................... 7

iv

## Rules

Fed. R. Civ. P. 12(b)(2)............................................................................................... 6

Fed. R. Civ. P. 19 ...................................................................................................... 19

Fed. R. Civ. P. 19(a) ........................................................................................... 19, 20

N.Y. C.P.L.R. § 302(a) ............................................................................................... 9

NY CPLR § 302(a)(2)............................................................................................... 10

## Other Authorities

*Lynn M. LoPucki, The Death of Liability*, 106 Yale L.J. 1, 67–69 (1996)...........................12

## **INTRODUCTION**

At its core, this case is a dispute over ownership of the trademarks associated with Wang Lao Ji Group's famous herbal tea products. Defendant Guangzhou Baiyunshan Pharmaceutical Holdings Co., Ltd. ("GBP") is a member of the Wang Lao Ji Group, and the owner of the U.S. trademarks challenged by Plaintiff Multi Access Limited ("MAL").  MAL and its affiliates are former distributors of Wang Lao Ji Group's tea products, and former licensees of the corresponding trademarks. The distribution and license agreements have terminated, so MAL launched an illicit global campaign to register the trademarks it formerly used under license. Having failed to claw rights away from GBP in various foreign jurisdictions (including China, Singapore, the European Union, Italy, and the United Kingdom), and apparently dissatisfied with the consolidated U.S. Trademark Trial and Appeal Board ("TTAB") proceedings that were pending for years, MAL turned to this Court hoping for a better result.

But GBP does not belong in this Court. After nearly two years of jurisdictional discovery, thousands of pages of documents produced by Defendants, a third-party subpoena for documents and deposition, and GBP's corporate representative's voluntary travel to Macau to be deposed for *eleven hours*—in the midst of China's COVID travel restrictions—no document, testimony, or other evidence has emerged indicating GBP has ever conducted business in New York or is otherwise subject to this Court's jurisdiction. This is true notwithstanding MAL's attempt to add eight new defendants to construct a fictional "GBP Enterprise," whose members are allegedly "jointly and severally involved in the sale" of the accused herbal tea products. As a matter of fact and law, there is no "GBP Enterprise" and the activities and alleged jurisdictional contacts of its co-defendants cannot be attributed or imputed to GBP.

1

Enough is enough. The Court has granted MAL significant leeway to muster support for its jurisdictional claims,[1] and none has emerged. As it did in the original complaint, MAL concedes that GBP is a Chinese company headquartered in China, and thus is not subject to the general jurisdiction of this Court. As confirmed in discovery and Mr. Yao's deposition, GBP does not manufacture, market, import, sell, or contract to supply the accused tea products, and it had no hand in designing, reviewing, or approving their allegedly infringing packaging; thus, GBP is also not subject to this Court's specific jurisdiction.

Once GBP is dismissed on jurisdictional grounds, it becomes an indispensable non-party. The Court will be unable to afford complete relief among the remaining parties, and GBP will be prejudiced because the case will adjudicate trademark rights that belong to GBP alone. Therefore, the entire action must be dismissed because GBP is a necessary party that cannot be joined and is indispensable.

If this case is not dismissed in its entirety because GBP is a necessary party that cannot be joined and is indispensable, the Court should dismiss MAL's unjust enrichment claim because it is preempted by the Copyright Act.

For these reasons, GBP moves to dismiss MAL's Amended Complaint under Federal Rule of Civil Procedure 12(b)(2), and GBP and Defendants WLJ (America) Co. Inc. Ltd. ("WLJ") and Tristar Food Wholesale Co. Inc. ("Tristar") move to dismiss the Amended Complaint under Rule 12(b)(7). GBP, WLJ, and Tristar also move to dismiss MAL's unjust enrichment claim under Rule 12(b)(6).

---

[1] GBP's original motion to dismiss MAL's amended complaint (ECF No. 99) was denied without prejudice, and the parties agreed that GBP would re-file it when Mr. Yao's deposition and any other jurisdictional discovery was completed (ECF No. 132) (Order).

## FACTUAL BACKGROUND[2]

As alleged in its Amended Complaint, MAL promotes and sells various products bearing the Chinese characters 王老吉 (pronounced "Wong Lo Kat" in Cantonese and "Wang Lao Ji" in Mandarin). Am. Compl. ¶¶ 2, 24–26. MAL's products include an herbal tea sold in a red can. *Id.* ¶¶ 2-3, 29. MAL alleges that it owns U.S. Supplemental Register Registration No. 4657844 for the red can's label design (the "'844 Registration"). *Id.* ¶¶ 32–35; Ex. A. MAL's alleged trade dress includes other features of the red can, including the Chinese characters 王老吉 in vertical form. *Id.* ¶ 36. MAL also claims copyright ownership of the red can's artwork and graphic design. *Id.* ¶¶ 44–45. MAL alleges it owns U.S. Registration No. 2005908 for the  mark (the "'908 Registration"). Am. Compl. ¶ 46; Ex. B. In 2016, MAL also filed four U.S. applications to register the Chinese characters 王老吉 in vertical form. *Id.* ¶¶ 52, 54–58; Exs. C–F.

GBP is a Chinese company with its principal place of business in China. Am. Compl. ¶ 8; Declaration of Yao Jiangxiong in Support of Motion to Dismiss Amended Complaint ("Yao Decl.") ¶¶ 3–4; Declaration of Joshua Cumby in Support of Renewed Motion to Dismiss Amended Complaint ("Cumby Decl.") ¶ 5, Ex. B (Yao Jiangxiong Dep. Tr.) ("Yao Dep.") 9:14–20. In the United States, GBP owns U.S. application no. 87474841 for the mark WANGLAOJI; U.S. application no. 79186883 for the mark WONGLO; and U.S. application no. 86691579 and registration no. 6208210 ("'210 Registration") for the mark . Am. Compl. ¶ 96.

---

[2] Unlike Rule 12(b)(6) motions, the Court is not required to accept the factual allegations of the complaint as true in resolving a Rule 12(b)(2) motion, if they are controverted by the defendant's affidavits. *See GlaxoSmithKline LLC v. Laclede, Inc.*, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019). Courts also will not "accept [a plaintiff's] conclusory allegations or draw argumentative inferences." *Id.*

MAL alleges that WLJ opened the Wang Lao Ji herbal tea museum in New York in 2018. Am. Compl. ¶¶ 63, 71. MAL alleges that WLJ's museum sells herbal tea products with packaging that is "confusingly similar" to MAL's red can label design, alleged trade dress, and alleged copyright. *Id.* ¶¶ 31, 64, 69, 70, 74–81, 87, 89. MAL alleges that the packaging of the products sold at WLJ's museum is also false and misleading. *Id.* ¶¶ 82–83. MAL also alleges that GBP is "misappropriating" MAL's trademarks by filing applications for the marks WANGLAOJI, WONGLO, and . *Id.* ¶¶ 96, 100. At Mr. Yao's deposition, he testified that GBP owns the Wang Lao Ji herbal tea museum located in Guangzhou, China. Yao Dep. 109:16–110:10 ("There might be other museums, but they're not related to us."). Mr. Yao also testified that GBP does not know who owns the Wang Lao Ji herbal tea museum in New York, and that GBP had no involvement in building the museum or designing its allegedly infringing interior. *Id.* at 110:11–111:23 ("Because it was not built by us, therefore we didn't have any observation – or involvement.").

In an attempt to confuse the Court and outmaneuver both New York's long-arm statute and the Constitution's Due Process Clause, the Amended Complaint defines "Defendants" to include GBP, WLJ, and eight new, independent entities, including Guangzhou Wang Lao Ji Great Health Industry Co., Ltd. ("Great Health"), Great Health's subsidiary, Guangzhou Wang Lao Ji Great Health Enterprise Development Co., Ltd. ("GHED"), and a U.S. distributor, Tristar. *See* Am. Compl. Intro. Lumping several separate defendants together, MAL also creates a fictional entity— the "GBP Enterprise"—which it alleges is "jointly and severally" involved in the production, promotion, marketing, and sale of the allegedly infringing tea products in New York. Am. Compl. ¶¶ 64–68, 70–74.

Great Health is GBP's wholly owned subsidiary, but Great Health and GBP are independent legal entities. ECF No. 67-2; Yao Dep. 26:19–25, Ex. 2. Great Health and GBP have executed a trademark license agreement under which Great Heath is permitted to use GBP's WANGLAOJI trademarks registered in China to manufacture and sell licensed herbal tea products. Yao Dep. at 34:11–15, 73:19–23, 74:8–23. Under that agreement, GBP retains the ability to monitor the quality of the licensed herbal tea products, which are manufactured in China and must meet Chinese national quality standards. Yao Dep. 78:20–79:24, 88:12–19, 120:22–121:7. GBP also receives a small percentage of Great Health's annual sales revenue as a license fee, regardless of where in the world those sales are made. *Id.* at 76:4–78:11, 122:10–24; Yao Decl. ¶ 18. GBP does not have a separate license agreement specific to WANG LAO JI trademarks applied-for or registered in the U.S. *Id.* at 73:1–7, 76:6–24. Because Great Health sells tea products manufactured in China worldwide, including in New York, those sales may be included in the annual sales from which the license fee paid by Great Health is calculated. *Id.* at 76:6–24, 77:17–22, 122:10–24.

MAL's Amended Complaint asserts 13 claims for relief under federal and state law: (1) infringement of the '908 registration; (2) infringement of the red can label design; (3) trade dress infringement; (4) unfair competition and false designation of origin; (5) false advertising; (6) reverse confusion; (7) copyright infringement; (8) trademark infringement and unfair competition under New York law; (9) trademark dilution under New York law; (10) unjust enrichment; and cancelation of the '210 Registration for likelihood of confusion (11), lack of *bona fide* intent to use (12), and naked licensing (13). Am. Compl. ¶¶ 105–206. In addition to injunctive and declaratory relief, damages, fees, costs, and interest, as well as its request that the Court cancel the '210 Registration, MAL asks the Court to "enter an Order refusing registration of the marks that are the subject of" GBP's trademark applications. *Id.* at Prayer for Relief (¶ 9).

## ARGUMENT

I.    **GBP is not subject to this Court's personal jurisdiction.**

A.    **Legal standard under Rule 12(b)(2)**

Foreign defendants are subject to the jurisdiction of a court only if they have "certain minimum contacts . . . such that the maintenance of a suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted). A defendant's contacts with the forum state may create two types of personal jurisdiction: general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).

MAL "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). A prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and brackets omitted).

In making this determination, the court "will not draw 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994), nor must it "accept as true a legal conclusion couched as a factual allegation," *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). A plaintiff's "unsupported allegations" can be rebutted by "direct, highly specific, testimonial evidence." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015) (quotations and citation omitted), *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236 (2d Cir. 2017). *See also Dow v. Nat'l Conference of Bar Examiners*, No. 1:16-CV-264 (PKC), 2017 WL 74715, at *6 (E.D.N.Y. Jan. 6, 2017) (granting Rule 12(b)(2) motion because defendant submitted a declaration refuting plaintiffs' conclusory jurisdictional allegations).

**B.      There is no general jurisdiction because GBP is not "at home" in New York.**

General personal jurisdiction exists when the non-resident defendant's contacts with the forum state are "continuous and systematic" and the defendant should "reasonably anticipate being haled into court there." *Int'l Shoe*, 326 U.S. at 317; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). General jurisdiction allows a defendant to be sued in the forum state because the defendant is essentially "at home" in that state. *Daimler*, 571 U.S. at 139. A defendant is "at home" in the state where the business is incorporated and where its principal place of business is located. *Id.*

GBP is not "at home" in New York. The Supreme Court in *Daimler* held that "only a limited set of affiliations with the forum" may support a finding that a corporation is "essentially at home," largely limiting such a finding to include the two "paradigm bases for general jurisdiction" for corporations—the place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137. As alleged in MAL's Amended Complaint, GBP is a Chinese company with its principal place of business in China. Am. Compl. ¶ 8.[3] *See also*, *e.g.*, *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (holding no general jurisdiction in New York over Turkish corporation based in Turkey). Only in "exceptional" cases will a "corporation's operations in a forum other than its formal place of incorporation or principal place of business [ ] be so substantial and of such a nature as to render the corporation at home in that state." *Daimler*, 571 U.S. at 139 n.19.

---

[3] "Upon information and belief," MAL also alleges that "the controlling shareholder of GBP is Guangzhou Pharmaceutical Holdings Limited (AKA Guangzhou Pharmaceutical Group)('GPHL'), a state-owned enterprise established by, and under the administration of, the Guangzhou Municipal People's Government State-owned Assets Supervision and Administration Commission in China." Am. Compl. ¶ 60.

Such exceptional circumstances do not exist here.[4] GBP does not have any offices or employees in New York, it does not own any property in New York, and it does not pay taxes in New York. Yao Decl. ¶¶ 5–7, 11–12. GBP is not licensed or registered to do business in New York and has no registered agent here. *Id.* ¶¶ 8–9. GBP does not advertise in New York. *Id.* ¶ 10. And before this lawsuit was filed, GBP was neither a party to nor a witness in any action in New York's state or federal courts. *Id.* ¶¶ 13–15. Thus GBP cannot be "at home" in New York and is not subject to this Court's general jurisdiction.[5]

## C.    There is no specific jurisdiction because GBP has no relationship with New York.

Specific jurisdiction allows a defendant to be sued in the forum state where the issues of the suit derive from or are connected to the contacts that establish jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To determine whether specific jurisdiction over a foreign defendant exists, courts perform a two-step analysis: First, the court must determine whether the defendant is subject to jurisdiction under the law of the forum state. *Sonera Holding*, 750 F.3d at 224. Second, the court must consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *Id.*

---

[4] Since *Daimler,* courts will rarely find a case to be "exceptional," even when the defendant (unlike GBP) engages in a substantial, continuous, and systematic course of business in the forum. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) (no general jurisdiction over Lockheed Martin in Connecticut even though the company leased a 9,000 square foot building in Connecticut, ran operations at three other leased locations in the state, employed between 30 and 70 workers in the state, and derived about $160 million in revenue from its work in Connecticut over a four year period); *Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, Case No. 4-CV-4819, 2015 WL 13019620 (S.D.N.Y. Sept. 21, 2015) (Costco was not subject to the general jurisdiction of New York courts, despite evidence that it had New York sales of $2.8 billion, operated 17 warehouses in New York, and had 3,400 New York employees).

[5] MAL may argue that the in-state activities of GBP's alleged "direct and indirect" subsidiaries or the "GBP Enterprise," or Tristar and WLJ, should be imputed to GBP. Am. Compl. ¶¶ 64, 66-68, 70-74. But that agency theory would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction'" the Supreme Court rejected in *Daimler*. 571 U.S. at 135–36.

The two-step inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotations omitted). "[T]he relationship must arise out of contacts that the 'defendant *himself*'" creates with the forum state." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (observing that the "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'") (internal citations omitted)).

### 1.    *None of the provisions of New York's long-arm statute apply to GBP.*

New York's long arm statute requires that MAL's causes of action "arise[] from" enumerated acts of a party or its agent: (1) "transacting any business within the state or contracts anywhere to supply goods or services in the state"; (2) committing a tort within the state; (3) committing a tort without the state causing injury to person or property within the state; or (4) owning, using, or possessing real property situated within the state. N.Y. C.P.L.R. § 302(a).

Section 302(a)(1) confers personal jurisdiction if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claim against the non-domiciliary must arise out of that business activity." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (internal quotation marks omitted). The term "transacting business" is defined "as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). And a cause of action will only "be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* (internal quotation marks omitted).

GBP does not transact any business in this state; thus there is no activity for MAL's claims

to "arise" from. *See, e.g.*, *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (RLM), 2020 WL 4810778, at *5 (E.D.N.Y. Aug. 11, 2020). Nor does GBP engage in "sufficiently persistent and ongoing activity within the state of New York" as required under § 302(a)(1) or (3), or commit any acts "within the state" as required by § 302(a)(2). There is no dispute that GBP is located in China—not New York. *See* Am. Compl. ¶ 8; Yao Decl. ¶ 4; Yao Dep. 9:14–20. GBP does not have employees in New York; does not have offices in New York; and does not own property in New York. Yao Decl. ¶¶ 5–7, 11; *see also Franklin v. Coloplast Corp.*, No. 5:18-CV-1413, 2019 WL 5307085, at *7 (N.D.N.Y. Oct. 21, 2019) (finding a declaration that the "defendant does not have any offices in the United States at all" enough to establish that defendant "do[es] not have sufficiently persistent and ongoing activity within the state of New York to merit personal jurisdiction"). GBP is a foreign holding company that does not manufacture, market, import, sell, or contract to supply any goods in New York or elsewhere in the United States, nor does it derive any substantial revenue from goods used or consumed in New York or the United States, including any allegedly infringing goods.[6] Yao Decl. ¶¶ 3–4, 16–18; Yao Dep. 62:24–63:11, 78:20–23 (testifying that Great Health "is responsible for the sales of the tea products" in the U.S. and that Great Health manufactures its tea products at "several production facilities inside China."), Ex. 2, 108:14–17 (testifying that GBP is not aware of how tea products sold by Great Health are imported into the U.S.). And GBP was not involved in the design of any allegedly infringing packaging, nor did it review or approve any allegedly infringing packaging. Yao Decl. ¶¶ 19–20; Yao Dep. 86:4–

---

[6] Although GBP receives license fees based on Great Health's annual sales of WANG LAO JI products worldwide (including in the U.S.), *see* Yao Decl. ¶ 18, the receipt of licensing fees is not sufficient to confer personal jurisdiction over a foreign licensor. *See e.g. Alcon Vision*, 2020 WL 4810778, at *5 (declining to exercise jurisdiction over a foreign trademark owner based on "owning and licensing trademarks which appeared on products distributed in New York by its licensee"); *see also Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011) ("As a general rule, personal jurisdiction does not exist over a licensor by virtue of its status if it does not exercise control over the licensee's sales activities and has no dealings with the licensee 'beyond the receipt of royalty income.'"); *Eragen Biosciences, Inc. v. Nucleic Acids Licensing, LLC*, 447 F. Supp. 2d 930, 938 (W.D. Wisc. 2006) (same).

10

21 ("The design of packaging of [Great Health] is their [sic] own responsibility. GBP does not take part in this, nor does it inspect or approve this."). GBP had no role in the formation of WLJ or Tristar, and GBP does not control, manage, or supervise any of its co-defendants or their businesses, including the alleged marketing, promotion, or sale of any allegedly infringing products identified in MAL's Amended Complaint. Yao Decl. ¶¶ 21–23; Yao Dep. 90:2–4 ("Q What is the relationship of WLJ America Company Inc. with GBP? A I don't know."), 117:6–23 (testifying that "as a holding company, [GBP's] responsibility is macro management," and GBP's subsidiaries "are independent entities in terms of their research and development, production, and sales.").[7] GBP *only* exercised the control over its trademarks necessary to "guarantee the quality of the products." *Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d. Cir. 1986) (the critical question in determining whether a licensing program is controlled sufficiently by the licensor to protect his mark is whether the "operations are policed adequately to guarantee quality of goods sold under the mark"). *See also* Yao Decl. ¶ 24; Yao Dep. 78:24–79:24 ("[W]e exercise our rights to monitor the manufacturing of the products as well as the quality of the tea products . . . GBP monitors the quality of [Great Health's] products by randomly – random sampling of their [sic] products on a – from time to time."). But GBP's quality control activities did not occur in New York, nor does (or can) MAL allege otherwise. Yao Decl. ¶ 24. Because trademark ownership is not sufficient to subject GBP to personal jurisdiction (discussed in greater

---

[7] *See also id.* at 71:3–14:

> Q Mr. Yao, earlier you testified about a system used by the subsidiaries to measure their sales targets; correct?
>
> A Yes. Let me explain this to you once again. GBP is responsible for the macro targets. And the subsidiaries independently are responsible for their own research and development, production, and marketing. Independently, they decide what product -- what products they would like to produce in their markets and what kind of input they would like to put into the production. And also they're responsible for their marketing and the sales strategies.

detail in Section I(C)(3) *infra*), MAL's claims must be dismissed as to GBP.

> **2.     The contacts of GBP's alleged "direct and indirect subsidiaries" or co-defendants are insufficient to confer personal jurisdiction over GBP itself.**

As it did in its now-mooted briefing, MAL may again argue that the alleged contacts of several, separate co-defendants or the so-called "GBP Enterprise" are sufficient to confer jurisdiction over GBP. But there is a "conspicuous lack of support" for a "unitary" or "integrated enterprise" theory of personal jurisdiction in this and other courts. *See, e.g.*, *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp*., 960 F.2d 1080, 1096 (1st Cir. 1992). Merging the contacts of separate defendants would also eliminate the requirements that each defendant's contacts be "purposeful," *Burger King*, 471 U.S. at 475, and that "[e]ach defendant's contacts with the forum State must be assessed individually," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). It would also eviscerate a defendant's ability to "structure [its] primary conduct" to obtain predictability over where it may be subject to suit. *World-Wide Volkswagen*, 444 U.S. at 297; *see also Jazini*, 148 F.3d at 186 (observing that a parent company is entitled to "carefully structure[] its business so as to separate itself from the operation of its wholly-owned subsidiaries"); *Lynn M. LoPucki, The Death of Liability*, 106 Yale L.J. 1, 67–69 (1996) (describing enterprise theory as "radical" and not "workable" due to "intolerable uncertainty").

MAL's novel theory of jurisdiction also lacks factual support. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *See United States v. Bestfoods,* 524 U.S. 51, 61 (1998) (citation omitted). Under Second Circuit precedent and New York law, to establish personal jurisdiction over a parent corporation based on the acts of its subsidiary, "the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." *Jazini*, 148 F. 3d at 184; *see also Gallelli v. Crown Imps., LLC*, 701 F. Supp. 2d 263, 271 (S.D.N.Y. 2010).

MAL fails to plead either. Jurisdiction based upon an agency theory requires the plaintiff to show that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials." *Jazini*, 148 F.3d at 184. "[W]hen considering the agency issue, the court considers whether the subsidiary is carrying out its own business, or the business of the parent." *Gallelli*, 701 F. Supp. 2d at 272. The mere sale of a product is not considered the act of doing "all the business which [the parent corporation] could do were it here by its own officials." *Jazini*, 148 F.3d at 184; *see also Gallelli*, 701 F. Supp. 2d at 272. Moreover, where the defendant over which jurisdiction is sought to be exercised is a holding company, "the business of that company is the business of investment." *Gallelli*, 701 F. Supp. 2d at 272. "Where a subsidiary is engaged in a completely different line of business, it cannot be said that the business of the parent is carried out by the subsidiary." *Id.* "Thus, the subsidiary of a holding company carries on its business as an investment of the holding company, and not as an agent of the holding company." *Id.*

"[A]t the heart" of the agency inquiry is whether the out-of-state defendant was the "primary actor[] in the transaction in New York." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998). "To support a 'mere department' theory of jurisdiction, the facts would have to support a finding that [the parent corporation] exercises 'pervasive control.'" *Gallelli*, 701 F. Supp. 2d at 273. MAL alleges no such facts. MAL does not allege that any entity included in the fictitious "GBP Enterprise" (or any other co-defendant)[8] is either an agent or mere department of GBP, nor does it plead any factual allegations from which the Court may infer that such a connection exists. This omission is telling after the years MAL and GBP have been embroiled in TTAB proceedings,

---

[8] Tristar and WLJ are excluded from MAL's definition of "GBP Enterprise." *See* Am. Compl. ¶ 64. However, neither Tristar nor WLJ is part of the Wang Lao Ji Group or a subsidiary of GBP. Yao Decl. ¶ 21; Yao Dep. 89:21–90:1 (testifying that Great Health is a subsidiary of GBP, but that WLJ "is not [a] subsidiary of GBP for sure."); *see also* Am. Compl. ¶ 72. Additionally, GPHL (included in MAL's "GBP Enterprise") is not GBP's subsidiary but its controlling shareholder. *See* Am. Compl. ¶ 60; Cumby Decl. ¶ 4, Ex. A at 129, 161, 324. GBP operates independently from GPHL. *Id.* ¶ 4, Ex. A at 161; Yao Dep. 13:21–14:3 (testifying that GBP and GPHL are separate entities), Ex. 2.

and now the years of jurisdictional discovery and MAL's deposition of Mr. Yao permitted in this case; if there were facts supporting the exercise of jurisdiction over GBP, MAL would know and plead them now.

To the extent MAL attempts to rely on an *unpleaded* theory of vicarious jurisdiction to impute any co-defendant's contacts with New York to GBP, that too fails. A parent company's general control over a subsidiary is insufficient to exercise personal jurisdiction over the parent company; rather, jurisdiction is only proper "when the activities of the parent show a disregard for the separate corporate existence of the subsidiary." *Volkswagenwek Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d. Cir. 1984). GBP is distinct from each of the purported members of the "GBP Enterprise," Tristar, and WLJ. In accordance with Chinese business laws and practices, and as described in its 2020 Annual Report, GBP "has its own independent and comprehensive organizational structure" and its "Board, the Supervisory Committee and other departments operate independently." Cumby Decl. ¶ 4, Ex. A at 171. GBP has established "an independent finance department, an independent accounting system and an independent financial management policy" and "maintained separate bank accounts and paid tax independently." *Id.* GBP had no role in the formation of either WLJ or Tristar, and GBP does not control, manage, or supervise WLJ, Tristar, or their businesses. Yao Decl. ¶ 22. GBP does not have any role in the alleged marketing, promotion, or sale of any of the allegedly infringing products identified in MAL's Amended Complaint, by Tristar, WLJ, any alleged member of the "GBP Enterprise," or any other party. *Id.* ¶¶ 19–20, 22–23; Yao Dep. 71:3–14, 77:23–78:3 (testifying that GBP's subsidiaries "can make their independent decisions as to their production, research and development, and . . . marketing and sales."), 117:22–23 ("Subsidiaries are independent entities in terms of their research and development, production, and sales."). MAL's pleading does not

contest that corporate formalities between GBP and the other members of the "GBP Enterprise," or GBP and Tristar or WLJ, are observed. Nor does MAL allege facts showing that GBP was an actor in any transaction in New York or that any other entity carried out GBP's business in New York under an agency test.

MAL also cannot succeed in showing that any member of the fictional "GBP Enterprise," Tristar, or WLJ is a "mere department" of GBP. GBP's control does not extend beyond the quality and nature of the accused tea products bearing the licensed marks. Yao Decl. ¶ 24; Yao Dep. 78:24–79:24, 85:14–24, 88:12–19. And GBP's quality-control activities do not occur in New York. Yao Decl. ¶ 24; Yao Dep. 78:20–79:5. Nor are they the type of "pervasive control" necessary to constitute "mere department" status. *See Arquest, Inc. v. Kimberly Clark Worldwide, Inc.*, 2008 WL 2971775, at *10 (S.D.N.Y. July 31, 2008); Yao Dep. 71:3–9 ("GBP is responsible for the macro targets. And the subsidiaries independently are responsible for their own research and development, production, and marketing."). These deficiencies are fatal to MAL's claims of jurisdiction. MAL's Amended Complaint thus does not (and cannot) allege that GBP controls the day-to-day activities of its alleged subsidiaries or that the alleged subsidiaries are mere departments or agents of GBP, or any extraordinary circumstances that might justify disregarding the co-defendants' separate corporate form. *See, e.g.*, *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 1989 WL 87418, at *5 (N.D.N.Y. July 31, 1989), *aff'd,* 902 F.2d 194 (2d Cir. 1990) ("In short, if a foreign corporation is to be found doing business here because of the acts of a local corporation, a true agency must be found between the two corporations—an agency marked by the usual trappings of control and fiduciary obligations."); *Jazini*, 148 F.3d at 184; *Chizniak v. CertainTeed Corp.*, No. 1:17-CV-1075 (FJS/ATB), 2020 WL 495129, at *3 (N.D.N.Y. Jan. 30, 2020) (piercing

the corporate veil is warranted only in extraordinary circumstances; *e.g.*, when there is evidence that the parent completely dominated or controlled a subsidiary solely to commit wrongdoing).

### 3.    *GBP's U.S. trademarks and participation in TTAB proceedings are insufficient to confer personal jurisdiction.*

Considering GBP's lack of any contacts with New York, MAL may argue that GBP's ownership of trademarks subject to U.S. trademark applications or registrations, or participation in prior TTAB proceedings constitutes "transacting business within New York" or "purposeful availment." But this and other courts have rejected both notions.

First, merely owning U.S. trademark applications or registrations is insufficient to support specific jurisdiction. In *Astor Chocolate Corp. v. Elite Gold Ltd.*, the plaintiff argued that the defendant's registration of a mark "represent[ed] a purposeful availment of the laws of the United States" and established personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the so-called "federal long-arm statute." No. 18 CIV. 11913 (PAE), 2020 WL 7496342, at *19 (S.D.N.Y. Dec. 21, 2020). This Court, however, found that "the weight of authority rejects basing federal long-arm jurisdiction on the mere registration of a U.S. trademark." *Id.* (collecting cases). Like the plaintiff in *Astor Chocolate*, MAL also cannot show that GBP's contacts with the United States, beyond simply owning U.S. trademark applications and registrations, satisfy the Due Process Clause. *Id.*; *see* Part I.C.4, below.

Nor does GBP's receipt of license fees suffice. As noted above, Great Health pays a license fee to GBP for use of GBP's marks registered in China based on a percentage of Great Health's annual sales. Yao Dep. 76:4–78:11, 122:10–24; Yao Decl. ¶ 18. Although GBP does not have a trademark license agreement specific to the U.S., Great Health's "annual sales" include sales of the WANG LAO JI herbal tea products worldwide, including in New York. *Id.* at 73:1–7, 76:6–24, 77:17–22, 122:10–24. Thus, the sum total of GBP's "contact" with New York is the passive

receipt of an attenuated license fee that *may* include sales in the State. That is not enough. Indeed, even if GBP had entered into a trademark license agreement specifically directed to U.S. sales or with a U.S.-based licensee, that limited contact would not support a finding of personal jurisdiction. In *Arquest, Inc.*, the Court declined to exercise personal jurisdiction over a foreign trademark owner who licensed its marks to a sibling corporation that used the trademarks on products it sold in New York. *Arquest*, 2008 WL 2971775, at *10; *see also Eco Pro Painting*, 807 F. Supp. 2d at 737 ("[P]ersonal jurisdiction does not exist over a licensor by virtue of its status if it does not exercise control over the licensee's sales activities and has no dealings with the licensee beyond the receipt of royalty income."). As noted by a sister court in this Circuit, "it would offend due process to premise personal jurisdiction solely on [a foreign defendant's] status as an owner and licensor of trademarks that appear on products distributed in New York by its licensee" or "exercising trademark quality control" over said products. *Alcon Vision*, 2020 WL 4810778, at *5; *see also Arquest*, 2008 WL 2971775, at *10 (controlling trademark quality "is not the 'pervasive control' of corporate affairs necessary to constitute 'mere department' status."). Here, there is no formal license agreement governing Great Health's use of GBP's Wang Lao Ji marks in the U.S. Yao Dep. 34:11–15, 64:22–65:1, 71:21–73:13, 107:13–108:12, Ex. 2. And even if there were, that would not be enough to subject GBP to this Court's jurisdiction.

Finally, GBP's participation in the prior-filed and pending TTAB proceedings against MAL also cannot create specific jurisdiction in this Court. In *Now-Casting Economics, Ltd. v. Economic Alchemy LLC*, this Court rejected the third-party plaintiff's "implicit" argument that specific personal jurisdiction existed because the third-party defendants filed oppositions to applications to register contested marks in a TTAB proceeding. No. 18 CIV. 2442 (ER), 2019 WL 4640219, at *7 (S.D.N.Y. Sept. 24, 2019). *See also Kaufhold v. Cyclopian Music, Inc.*, No. 10

CIV. 4588 DLC, 2010 WL 5094630, at *4 (S.D.N.Y. Dec. 14, 2010) (finding that plaintiffs who attacked defendants' PTO filings and sought cancelation of their marks "failed to make a prima facie showing of specific personal jurisdiction over the defendants . . . because the plaintiffs' claims do not arise from the defendants' contacts with New York").

4.     *Because GBP has no relationship with New York, the exercise of personal jurisdiction is inconsistent with due process.*

Because there is no statutory basis for jurisdiction, it is "unnecessary to determine whether the exercise of personal jurisdiction would comport with federal constitutional standards of due process." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 n.6 (2d Cir. 1983). Thus the Court need not determine if its exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Walden*, 571 U.S. at 283 (internal quotation marks omitted). Nevertheless, because there is no suit-related conduct establishing any connection between GBP and New York, the exercise of jurisdiction is constitutionally impermissible. *Id.* at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *Burger King*, 471 U.S. at 475–76.

MAL cannot establish that GBP has any contacts with New York from which its claims arise, much less a substantial connection. See Part I.C.1 above. Accordingly, GBP has not availed itself of the privilege of doing business in New York and could not have anticipated that it would be haled into court here. *Best Van Lines*, 490 F.3d at 242.

MAL also cannot show that the exercise of jurisdiction is reasonable. When determining whether it is reasonable to exercise jurisdiction in a particular case, courts look to "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy;

18

and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

The reasonableness factors weigh against the exercise of jurisdiction over GBP. Requiring GBP to litigate in a foreign country would impose a unique burden upon it. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 103, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Neither this forum's interest in adjudicating this case nor MAL's interest in obtaining relief would be furthered by the exercise of jurisdiction over a foreign company that did not manufacture, market, import, sell, or supply any of the allegedly infringing products, or design, review, or approve their allegedly infringing packaging. Yao Decl. ¶¶ 17, 19–20, 22–23; Yao Dep. 62:24–63:11, 71:3–14, 78:20–23, 86:4–21, 117:6–23 ("GBP is responsible for the macro management. It doesn't get into such details."). Thus the forum's interest in adjudicating the case as to GBP is minimal, at best. MAL's transparent attempt to seize GBP's trademark rights in a venue that has no jurisdiction over GBP is wholly unreasonable—and therefore violates due process—and should be rejected.

## II. The entire action must be dismissed because GBP is a necessary party that cannot be joined and is indispensable.

### A. Legal standard under Rule 19

Federal Rule of Civil Procedure 19 "sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). "First, the court must determine whether an absent party belongs in the suit, *i.e.,* whether the party qualifies as a 'necessary' party under Rule 19(a)." *Id.* "The burden of demonstrating that a party is necessary rests with the moving party." *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 455 (S.D.N.Y. 2010).

After the court "makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional or other reasons . . . the court must finally determine whether the party is 'indispensable'" and the action must be dismissed under Rule 19(b). *Viacom*, 212 F.3d at 725.

### B. GBP is a necessary party because the Court cannot afford complete relief between MAL and the remaining defendants, since GBP owns the trademarks that MAL seeks to adjudicate.

If feasible, a party should be joined under Rule 19(a) when

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

GBP is a necessary party for at least two reasons. *First*, the Court cannot accord complete relief in GBP's absence. As discussed above, the Court cannot exercise personal jurisdiction over GBP. Yet MAL requests a panoply of relief, including a broad permanent injunction that goes far beyond the mere sale of allegedly infringing tea by GBP's co-defendants. *See* Am. Compl. Prayer for Relief (¶ 1). MAL also asks the Court to cancel the '210 Registration and "enter an Order refusing registration of the marks that are the subject of the GBP Applications." *Id.* ¶¶ 193–206, Prayer for Relief (¶ 9). But how can the Court cancel or refuse the registration of marks that are not owned by the other defendants?

*Second*, GBP has a significant interest in the subject matter of this case that may be impaired if the case is decided in GBP's absence. Specifically, GBP owns trademarks that MAL alleges infringe MAL's alleged trademarks, including, for example, the design mark shown below:

**MAL's Alleged Mark**          **GBP's Mark**

          

Am. Compl. ¶¶ 47, 49–51, 96(b)–(c). In so pleading, GBP's ownership rights have been placed

directly at issue by MAL's attempt to assert and enforce marks it does not own. MAL not only

requests that the Court cancel the '210 Registration and "enter an Order refusing registration of

the marks that are the subject of the GBP Applications"—which cannot be adjudicated without

GBP—but also requests an order enjoining the use of any marks or trade dress that are "confusingly

similar" to the marks that MAL claims. Am. Compl. ¶¶ 193–206, Prayer for Relief (¶¶ 1(a), 9). To

the extent the Court ultimately finds the parties' respective marks to be confusingly similar, such

an order would impair and impede GBP's ability to protect its interest in its marks.

"Courts that have faced the issue have treated trademark owners as indispensable for Rule

19 purposes in infringement actions." *Earl v. Peverett*, 1991 WL 33281, at *1 (S.D.N.Y. Mar. 7,

1991) (collecting cases); *see also Diaz v. Glen Plaid, LLC*, No. 7:13-CV-853-TMP, 2013 WL

5603944, at *3 (N.D. Ala. Oct. 11, 2013) (finding that the University of Alabama was a necessary

party because it claimed ownership in a mark similar to that asserted by the plaintiff). Thus,

because there is no dispute that GBP owns the accused trademarks and associated applications and

'210 Registration to be canceled, GBP is an indispensable party to this action.

**C.      GBP will be prejudiced if the case proceeds in its absence, and it will not be
            bound by any finding of infringement or order enjoining the use or
            registration of its marks.**

Rule 19(b) provides:

If a person who is required to be joined if feasible cannot be joined, the court must
determine whether, in equity and good conscience, the action should proceed
among the existing parties or should be dismissed. The factors for the court to
consider include: (1) the extent to which a judgment rendered in the person's

21

absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Courts have held that, where a trademark owner is not subject to personal jurisdiction in a court, the action should be dismissed. *See e.g. Earl*, 1991 WL 33281, at *2; *Revolution Distrib. v. Evol Nutrition Assocs., Inc.*, 2012 WL 2368634, at *10 (D. Ariz. June 21, 2012) ("[W]hen trademark owners cannot feasibly be joined to an infringement action for lack of personal jurisdiction, courts have dismissed the claims to which the owner is indispens[a]ble under Rule 19."); *Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar, S.A.*, 196 F.R.D. 306, 310 (E.D. Mich. 2000); *see also Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, No. 10-61856-CIV, 2011 WL 7807548, at *15 (S.D. Fla. July 26, 2011) ("If the plaintiff is unable to join the co-owner(s) of the mark, the Court should dismiss the complaint in its entirety). Doing so protects (i) absent trademark owners from the estoppel effect of a judgment in which the trademark owner did not participate and which determined the trademark to be invalid, (ii) the plaintiff's interest in avoiding multiple lawsuits concerning the same basic facts and (iii) the public's interest in efficiently utilizing judicial resources. *May Apparel Grp., Inc. v. Ava Import-Export, Inc.*, 902 F. Supp. 93, 96 (M.D.N.C. 1995) (citing *Earl*, 1991 WL 33281, at *1).

All four factors favor dismissal of the entire action in GBP's absence. *First*, a judgment in GBP's absence would prejudice GBP because this is fundamentally a dispute over trademark ownership. "It seems pointless to litigate in [GBP's] absence whether plaintiffs or defendants have a superior right to the mark if [GBP's] right is superior to the rights of any parties already joined in this action." *Earl*, 1991 WL 33281, at *1; *see also Egrandbuy, Inc. v. LEGO Juris A/S*, 2016 WL 11744380, at *5-6 (C.D. Cal. Nov. 16, 2016) (finding that "[a]t issue in this lawsuit is whether

22

Lego, in addition to Warner Defendants, has a legal right to use its LEGO DIMENSIONS mark . . . or instead whether, by doing so, they infringe on Egrandbuy's registered trademarks" and noting that "resolution of this action in [Lego's] absence would [ ] 'as a practical matter impair or impede [its] ability to protect the interest' in using this mark."). A finding of infringement, cancelation of a mark, or refusal to register a mark would, at a minimum, cloud GBP's title to its marks. *Cf. Diaz*, 2013 WL 5603944, at *6 ("A determination that plaintiffs are the owner of the mark impairs or clouds the University's claimed ownership interest and it would subject the defendant to the conflicting and inconsistent positions as to whether the University has the right to license the mark and enforce the license agreement against it.").

*Second*, there is no way to shape or limit any judgment to avoid or reduce that prejudice. MAL asks the Court to cancel the '210 Registration and "enter an Order refusing registration of the marks that are the subject of the GBP Applications." Am. Compl. ¶¶ 193–206, Prayer for Relief (¶ 9). Thus, a final judgment in this case could result in cancelation of GBP's registration, refusal of GBP's applications, and a finding that the subject marks are infringing—all without GBP's participation. *See Int'l Importers, Inc., LLC*, 2011 WL 7807548, at *15 (finding this factor favors dismissal because, "if the 'Wallaby Creek' mark is invalidated, it will have been done so without the co-owner(s)' participation."); *see also Earl*, 1991 WL 33281 at *1 (finding this factor weighs in favor of dismissal). "Even if relief in this case is limited only to enjoining [the remaining defendants] from using the mark, the judgment would have the practical effect of impairing [GBP's] claim of ownership in the mark by casting doubt on it." *Diaz*, 2013 WL 5603944, at *6.

*Third*, a judgment in MAL's favor would not be adequate because GBP—if dismissed—is not a party and would not be bound by that judgment. For example, an injunction could prevent WLJ or Tristar from using GBP's allegedly infringing marks (again, potentially without GBP's

23

participation), but it could not prevent GBP from using its marks or licensing them to others. *See Jaguar Cars*, 196 F.R.D. at 309 ("Although it would appear that Plaintiffs could obtain the relief they seek if Defendant Festina, MMJ Spain's exclusive distributor of 'JAGUAR' watches in the United States, is prevented from using the mark 'JAGUAR,' . . . there would be nothing to prevent MMJ from utilizing another distributor."); *see also May Apparel Grp. Inc.*, 902 F. Supp. at 96 (recognizing that trademark owner could still license mark to other manufacturers in the future). This could lead to potentially inconsistent judgments if GBP's marks are enforced against an infringer or challenged in the future (including against or by MAL). *Cf. Diaz*, 2013 WL 5603944, at *6 (finding the University of Alabama an indispensable party for similar reasons). Moreover, any relief in MAL's favor in this case would expose WLJ and Tristar to the possibility of multiple or inconsistent obligations. For example, if WLJ and Tristar were to "stop distributing [the accused products]," they "would be exposing [themselves] to the possibility of litigation . . . to enforce their distribution agreement[.]" *Jaguar Cars*, 196 F.R.D. at *309.

*Fourth*, if the case is dismissed, MAL retains an adequate forum for addressing the controversy over GBP's and MAL's respective trademark applications, in a venue with jurisdiction over those applications—the previously filed TTAB proceedings pending since 2017.[9] *See Diaz*, 2013 WL 5603944, at *6. Although the TTAB proceedings "do[] not directly address the alleged infringement" by Defendants, "it may ultimately resolve the conflicting claims of ownership" between MAL and GBP with respect to their competing applications and registrations. *Id.* "Thus, [MAL is] not left entirely without a remedy." *Id.* (noting that, "if they succeed in defending their ownership of the mark, they are in a much stronger position to pursue an infringement action thereafter, notwithstanding the absence of the University from such litigation.").

---

[9] MAL could similarly file a petition to cancel the '210 Registration in TTAB.

**III.     MAL's unjust enrichment claim is preempted in part by the Copyright Act.**

      **A.     Legal standard under Rule 12(b)(6)**

A complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). Conclusory allegations, however, are not assumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009).

      **B.     To the extent it relies on copyright, MAL's unjust enrichment claim is preempted.**

"Upon information and belief," MAL alleges that "Defendants have profited from their sales" of allegedly infringing tea products under MAL's trademarks, red can label design, trade dress, and copyright. Am. Compl. ¶ 190. "Upon information and belief," MAL also alleges that "Defendants have been unjustly enriched" by those sales. *Id.* ¶ 191.

"Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act." *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1322 (S.D.N.Y. 1997). Because "unjust enrichment claims relating to the use of copyrighted material are generally preempted," *id.*, MAL's unjust enrichment claim should be dismissed to the extent that it relies on MAL's alleged copyright.

<u>**CONCLUSION**</u>

For these reasons, GBP, WLJ, and Tristar respectfully request that this lawsuit be dismissed in its entirety. If the lawsuit is allowed to proceed, GBP respectfully requests that it be dismissed because it is not subject to this Court's personal jurisdiction, and GBP, WLJ, and Tristar request that MAL's unjust enrichment claim also be dismissed for failure to state a claim.

25

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Maia T. Woodhouse*
Maia T. Woodhouse, TN BPR No. 030438
(admitted pro hac vice)
Joshua Counts Cumby, TN BPR No. 037949
(admitted pro hac vice)
1600 West End Avenue, Suite 1400
Nashville, TN 37203
Tel: (615) 259-1450
Fax: (615) 259-1470
Email: maia.woodhouse@arlaw.com
Email: joshua.cumby@arlaw.com


**KUBLANOVSKY LAW, LLC**

Eugene D. Kublanovsky
10 East 39th Street, 12th Floor
New York, New York 10016
Tel: (212) 729-4707
Email: eugene@edklaw.com

*Attorneys for Defendants Guangzhou Baiyunshan*
*Pharmaceutical Holdings, Co., WLJ (America) Co.*
*Inc. Ltd., and Tristar Food Wholesale Co. Inc.*