USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/22/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                              :

MULTI ACCESS LIMITED,           :

                              :

            Plaintiff,        :

                              :       20-cv-7397 (LJL)

      -v-                  :

                              :       OPINION AND ORDER

GUANGZHOU BAIYUNSHAN          :
PHARMACEUTICAL HOLDINGS CO., LTD.   :
(AKA GUANGZHOU BAIYUNSHAN     :
PHARMACEUTICAL HOLDING CO., LTD.);   :
WLJ (AMERICA) CO. INC.; GUANGZHOU   :
WANGLAOJI GREAT HEALTH CO., LTD.;   :
GUANGZHOU WANG LAO JI GREAT     :
HEALTH INDUSTRY CO., LTD. (AKA WLJ   :
GREAT HEALTH INDUSTRY CO., LTD.);   :
GUANGZHOU WANGLAOJI          :
PHARMACEUTICAL CO., LTD.;         :
GUANGZHOU WANG LAO JI GREAT     :
HEALTH ENTERPRISE DEVELOPMENT CO., :
LTD. (AKA WLJ GREAT HEALTH      :
ENTERPRISES DEVELOPMENT CO., LTD.);  :
GUANGZHOU PHARMACEUTICAL     :
HOLDINGS LTD. (AKA GUANGZHOU    :
PHARMACEUTICAL GROUP); GUANGZHOU :
WANG LAO JI GREAT HEALTH ENTERPRISE :
CO., LTD.; GUANGZHOU WANGLAOJI   :
HEALTH INDUSTRY CO., LTD., and TRISTAR :
FOOD WHOLESALE CO. INC.,      :

                              :

            Defendants.      :

                              :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants Guangzhou Pharmaceutical Holdings Ltd. ("GPHL") and Guangzhou

Wanglaoji Pharmaceutical Co., Ltd. ("GWPC" and together with GPHL, the "Moving

Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss the claims

against them for lack of personal jurisdiction.  Dkt. No. 193.

Plaintiff Multi Access Limited ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the first, second, and third counterclaims of Defendants WLJ (America) Co. Inc. ("WLJ") and Tristar Food Wholesale Co. Inc. ("Tristar" and together with WLJ, the "Counterclaimants").  Dkt. No. 214.[1]

For the following reasons, both motions are granted.

## BACKGROUND

The following facts are drawn from the amended complaint, Dkt. No. 77, and are construed in the light most favorable to Plaintiff.  Additionally, the Court assumes familiarity with its August 21, 2023 Opinion and Order dismissing the claims against Guangzhou Baiyunshan Pharmaceutical Holdings Co., Ltd. ("GBP") for lack of personal jurisdiction. Dkt. No. 208.

Plaintiff is the successor in interest to the U.S. rights previously held by companies owned by the descendants of Wong Lo Kat (王老吉),[2] who created the secret formula for a famed herbal tea that has been sold under his name since the nineteenth century in the Guangdong Province of China.  Dkt. No. 77 ¶ 18.  Wong Lo Kat's business soon spread to Hong Kong and, in or about 1913, Wong Lo Kat's descendants partitioned his enterprise through a separation agreement, whereby Wong Lo Kat's son received the rights to the business in Hong Kong while Wong Lo Kat's grandson received the rights to the business in Mainland China.  *Id.* ¶¶ 19–21.

---

[1] Plaintiff previously moved to dismiss the Counterclaimants' first, second, and third counterclaims, Dkt. No. 211, but the Counterclaimants subsequently filed an amended answer, Dkt. No. 213.  Plaintiff's initial motion to dismiss is therefore denied as moot.  *See Merrill v. Deng*, 2021 WL 3751920, at *1 (S.D.N.Y. June 14, 2021) ("Defendants having amended their answer, plaintiff's motion to dismiss their earlier-pleaded counterclaims is denied as moot.").
[2] In Cantonese, the Chinese characters 王老吉 are pronounced "Wong Lo Kat."  Dkt. No. 77 ¶ 24.  In Mandarin, those characters are pronounced "Wang Lao Ji."  *Id.* ¶¶ 24– 25.

Today, the corporate successors to those branches are embroiled in an intellectual-property dispute. Plaintiff—whose business derives from the Hong Kong wing of Wong Lo Kat's descendants—promotes and sells various Wong Lo Kat brand herbal tea-related beverages and products that use the secret formula. *Id.* ¶ 26. One of Plaintiff's most popular beverages is the herbal tea sold in a distinctive red can ("Wong Lo Kat Red Can" or "Red Can"). *Id.* ¶ 29. The Red Can has used the same design since 1998:



*Id.* ¶¶ 29–30. The Red Can's design is an original work of authorship protected under the copyright laws of Hong Kong SAR (the "Wong Lo Kat Work"). *Id.* ¶ 44. Plaintiff owns the U.S. rights to the Wong Lo Kat Work. *Id.* ¶ 45.

Plaintiff also owns a design mark, U.S. Reg. No. 4657844 ("'844 Registration"), filed on the basis of a foreign registration from the European Community ("EU"). *Id.* ¶ 32; Dkt. No. 77-1. The design mark "consists of an arrangement of bands of various widths of brown, red and black in the following order from top to bottom: brown, red, black, red, black, red, black and red," Dkt. No. 77 ¶ 33; Dkt. No. 77-1, as displayed below:



3

Dkt. No. 77 ¶ 32.  The label of the Wong Lo Kat Red Can uses the design mark's arrangement of bands of various widths and colors.  *Id*. ¶ 35.

Additionally, Plaintiff owns a 王老吉 (Wong Lo Kat)-formative trademark (the "Wong Lo Kat Trademark").  *Id.* ¶ 46.  The Wong Lo Kat Trademark is protected by a federally registered mark, U.S. Reg. No. 2005908 ("'908 Registration"), that was registered on October 8, 1996, *id*. ¶¶ 46–47; Dkt. No. 77-2.  It appears as follows:



Dkt. No. 77 ¶ 47.  As the '908 Registration explains, "[t]he Chinese characters in the mark transliterate to 'wang lao ji,' which mean 'wang,' 'old,' and 'lucky' respectively in English, but when they are used together, they have no meaning."  *Id*. ¶ 48.

Defendants inherited the business of the Mainland China strand of Wong Lo Kat's enterprise, including the registered marks for Wong Lo Kat in the People's Republic of China ("PRC").  In or about the 1950s, the PRC seized the Wong Lo Kat business in Mainland China, transforming it into a state-owned enterprise (the "PRC Enterprise").  *Id*. ¶ 61.  The PRC Enterprise registered the Chinese characters for Wong Lo Kat in the PRC in or about 1988 and 1992, and then transferred those registrations to another state-owned enterprise: GPHL.  *Id*. ¶ 62.  GPHL, in turn, transferred the marks to its subsidiary, GBP.  *Id.*  Although GBP does not itself produce, sell, or advertise Wong Lo Kat products, GBP owns subsidiaries that play various roles in advertising, promoting, and selling products under the Wong Lo Kat brand.  *Id*. ¶ 64.  Those subsidiaries include GWPC and Guangzhou Wang Lao Ji Great Health Industry Co., Ltd. ("Great Health Industry"), *id.*, both of which are Chinese limited companies with their principal places of

4

business in Guangzhou, *id.* ¶¶ 10, 12.  Notably, Great Health Industry and its affiliates entered into exclusive sales agency agreements and general agency agreements with Tristar Food Wholesale Co. Inc. ("Tristar"), a New Jersey corporation, on at least four different occasions between 2014 and 2019.  *Id.* ¶¶ 17, 66.

Thus, the amended complaint alleges the following relationships among the aforementioned entities:



In or around 2017, Plaintiff became aware that GBP's direct and indirect subsidiaries were involved in the promotion, offering for sale, and sale of Wanglaoji herbal tea products bearing designs and markings similar to Plaintiff's intellectual property (the "Challenged Products").  *Id.* ¶ 70.  For example, the Challenged Products feature a red label with dark colored bands at the top and bottom of the red portions, and the Wong Lo Kat Trademark, *id.* ¶ 76, as shown below:



*Id*. ¶ 75.  The Challenged Products are also sold in sixpacks with the following packaging, which includes an image of a can that resembles the Red Can:



*Id*. ¶ 77.  GBP affiliates also used images of a similar red can in advertising on billboards in New York's Times Square and in Chinese-language newspapers.  *Id.* ¶ 84.

In 2017, representatives of Tristar and GBP's corporate affiliates attended a two-day event in Chicago (the "Chicago Roadshow") to promote the Challenged Products.  *Id.* ¶ 68.

Additionally, around December 2018, Plaintiff learned that WLJ, a New York corporation, had opened an herbal tea museum and shop on Grand Street in New York City (the "Grand Street Tea Museum").  *Id.* ¶¶ 9, 71.  The museum, which is open to the public, sells the Challenged Products and displays exhibits recounting a misleading history of the Wong Lo Kat

brand. *Id.* ¶¶ 85–88.  An image similar to the Red Can appears on signage and cups at the

museum, as shown below:



*Id.* ¶ 89.

## PROCEDURAL HISTORY

Plaintiff commenced this lawsuit by filing a complaint on September 10, 2020 against

GBP and WLJ.  Dkt. No. 1.  GBP and WLJ moved to dismiss on March 5, 2021.  Dkt. Nos. 27–

29.  The parties sought and received permission from the Court to conduct jurisdictional

discovery.  Dkt. Nos. 30–31.  On September 21, 2021, Plaintiff moved for leave to file an

amended complaint, which named the remaining Defendants in addition to GBP and WLJ.

Dkt. No. 50.  The Court granted Plaintiff's motion to amend on November 30, 2021 and denied

GBP and WLJ's motion to dismiss as moot.  Dkt. No. 76.

Plaintiff filed the amended complaint on December 3, 2021.  Dkt. No. 77.  Defendants

GBP, WLJ, and Tristar moved to dismiss the amended complaint.  Dkt. No. 141.  They

contended that the Court lacked personal jurisdiction over GBP, as it "does not manufacture,

market, import, sell, or contract to supply the accused tea products," and that the amended complaint should be dismissed because "GBP is a necessary party that cannot be joined and is indispensable." Dkt. No. 142 at 2. Plaintiff opposed that motion. Dkt. No. 146. On August 21, 2023, the Court granted the motion to dismiss in part and denied it in part. Dkt. No. 208. The Court held that it lacked personal jurisdiction over GBP, but ruled that GBP was not an indispensable party, such that the dismissal of the claims against GBP did not require dismissing the remainder of Plaintiff's lawsuit. *Id.*

Defendants GPHL and GWPC filed a motion to dismiss for lack of personal jurisdiction on October 20, 2023. Dkt. No. 193. They also filed an accompanying memorandum of law and declarations from Yu Zhengyuan, Chen Xiansheng, and Jin Yoshikawa. Dkt. Nos. 194–196. Plaintiff filed a memorandum of law opposing the motion and a declaration of Susan Goldsmith on November 3, 2023. Dkt. Nos. 200–201. The Moving Defendants filed a reply in further support of their motion to dismiss. Dkt. No. 204.

Defendants WLJ and Tristar answered the amended complaint on November 16, 2023. Dkt. No. 203. In their answer, WLJ and Tristar asserted five counterclaims against Plaintiff. Dkt. No. 203 at 50–54. Plaintiff moved to dismiss the Counterclaimants' first three counterclaims on December 21, 2023. Dkt. No. 211. However, WLJ and Tristar filed an amended answer on February 1, 2024, Dkt. No. 213, thereby mooting Plaintiff's motion to dismiss. The amended answer likewise includes five counterclaims against Plaintiff. Specifically, Counterclaimants aver: (1) Plaintiff defrauded the U.S. Patent and Trademark Office ("USPTO") in applying for the '908 Registration by falsely claiming that it had used the underlying mark in U.S. commerce despite knowing that unlicensed third parties had done so, *id.* at 53–54; (2) Plaintiff defrauded the USPTO in applying for the '844 Registration by falsely

8

claiming that it had a bona fide intent to use the underlying mark in U.S. commerce despite knowing that unlicensed third parties had done so, *id.* at 55; (3) Plaintiff further defrauded the USPTO in applying for the '844 Registration by falsely attesting that its country of origin was the EU, *id.* at 56; (4) Plaintiff abandoned the '908 and '844 Registration trademarks by failing to use them in U.S. commerce, *id.* at 57; and (5) Plaintiff granted licenses in those trademarks without any quality control provisions or inspections, rendering the marks invalid, *id.* at 58.

On February 22, 2024, Plaintiff moved to dismiss Counterclaims One, Two, and Three in WLJ and Tristar's amended answer for failure to state a claim. Dkt. No. 214. Plaintiff also filed a supporting memorandum of law and declaration of Susan Goldsmith. Dkt. Nos. 215–216. On March 7, 2024, Counterclaimants filed a memorandum opposing the motion to dismiss. Dkt. No. 217. Plaintiff filed a reply on March 14, 2024. Dkt. No. 218.

## LEGAL STANDARD

### I.  Motion to Dismiss for Lack of Personal Jurisdiction

"A plaintiff bears the burden of establishing personal jurisdiction over a defendant." *GlaxoSmithKline LLC v. Laclede, Inc.*, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019); *see also DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The showing required of a plaintiff "varies depending on the procedural posture of the litigation." *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (citation omitted); *see also SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 527 (S.D.N.Y. 2022). "[W]here the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held—'the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)

9

(quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  "At that point, the prima facie showing must be factually supported."  *Ball*, 902 F.2d at 197.  "This showing may be made through pleadings, affidavits, and supporting materials."  *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409 (S.D.N.Y. 2017).  "[T]he court applies a 'standard . . . akin to that on a motion for summary judgment,' construing the 'pleadings documents, and other evidentiary materials . . . in the light most favorable to the plaintiff and all doubts are resolved in its favor.'"  *Vasquez v. H.K. & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020) (quoting *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004)).  "[T]he Rule 56 standard . . . guides the Court as to the documents it may consider outside of the pleadings," and "a court, in resolving a Rule 12(b)(2) motion made after jurisdictional discovery, may consider only *admissible* evidence."  *Id*. at 251 (emphasis in original).  "Conclusory allegations based only on information and belief are not sufficient to provide such factual support."  *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 (E.D.N.Y. 2021) (internal quotation marks omitted).

## II.  Motion to Dismiss for Failure to State a Claim

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint."  *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) (quoting *Orientview Techs. LLC v. Seven For All Mankind, LLC*, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013)); *see also Oneida Indian Nation v. Phillips*, 981 F.3d 157, 165 (2d Cir. 2020).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads

10

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* This "does not impose a probability requirement at the pleading

stage" but rather "calls for enough fact to raise a reasonable expectation that discovery will

reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives,*

*Inc. v. Siracusano*, 563 U.S. 27, 46 (2011). That is, a complaint generally need not include

"detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555.

In reviewing a motion to dismiss under Rule 12(b)(6), a court "accept[s] all factual

allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town*

*of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016). However, "the tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*,

556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*

The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.* at 679.

When a pleading alleges fraud, Federal Rule of Civil Procedure 9(b) requires the plaintiff

to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In order

to comply with Rule 9(b), "the complaint must (1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Particularity "means the who, what, where, when and how: the first paragraph of any newspaper story." *Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*, 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004) (quoting *In re Initial Public Offering Secs. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003)).  "Allegations of fraud may be 'too speculative even on a motion to dismiss,' particularly when premised on 'distorted inferences and speculations.'" *Ross v. Lloyds Banking Grp., PLC*, 2012 WL 4891759, at *4 (S.D.N.Y. Oct. 16, 2012) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2d Cir. 2007)), *aff'd*, 546 F. App'x 5 (2d Cir. 2013).

## DISCUSSION

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

Moving Defendants argue that the claims against GPHL and GWPC must be dismissed as neither entity has "the requisite contacts to subject them to this Court's personal jurisdiction." Dkt. No. 194 at 2.  Moving Defendants contend that they are foreign corporations that plainly are not "at home" in New York for purposes of general jurisdiction, *id.* at 6–7, and that their relevant contacts with both New York and the United States as a whole are too scanty to support specific personal jurisdiction, *id.* at 8, 13.  In response, Plaintiff does not argue that either of the Moving Defendants is subject to general jurisdiction in New York.  *See* Dkt. No. 200 at 1–2.  However, Plaintiff avers that both GHPL and GWPC have sufficient contacts to support specific jurisdiction under New York law or, in the alternative, Federal Rule of Civil Procedure 4(k)(2). *Id.* at 11, 16.

"[T]he Court engages in a 'two-step analysis' to determine personal jurisdiction over a non-domiciliary." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 362 (S.D.N.Y. 2020).  "First,

the Court applies the forum state's long-arm statute." *Id*. (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).  "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id*. (citing *Chloe*, 616 F.3d at 164).

New York's long-arm statute provides, in relevant part:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act[.]

N.Y. C.P.L.R. § 302(a).

To satisfy Section 302(a)(1), "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)).  "[A] non-domiciliary defendant need not be physically present in New York to 'transact business,' so long as the defendant has engaged in 'purposeful activity,' for example, 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Spin Master Ltd.*, 463 F. Supp. 3d at 362 (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007)).

Section 302(a)(2), on the other hand, requires that the "'defendant's act or omission . . . occurred within the State' in which [the] plaintiff seeks the exercise of personal jurisdiction." *Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 468–69 (S.D.N.Y. 2022) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir.

1999)), *aff'd*, 66 F.4th 69 (2d Cir. 2023).  "Notwithstanding this requirement, jurisdiction under Section 302(a)(2) may extend to out-of-state individuals who did not themselves commit a tort in New York, but 'who can be deemed responsible for such a tort based upon theories of agency.'" *Id*. (quoting *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014)).  "[T]he presence of [a] subsidiary alone does not establish the parent's presence in the state." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).  However, a subsidiary will be deemed the agent of its parent for purposes of Section 302(a)(2) when the subsidiary "acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident [parent]." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (quoting *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981)); *see also Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988).

Even if a foreign defendant's contacts with New York are insufficient under Section 302(a), a federal court can nevertheless exercise personal jurisdiction over that defendant if the requirements of Federal Rule of Civil Procedure 4(k)(2) are met.  *See Astor Chocolate Corp. v. Elite Gold Ltd.*, 2020 WL 2130680, at *5 (S.D.N.Y. May 5, 2020).  Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:  (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Accordingly, Rule 4(k)(2) demands "(1) that plaintiff's cause of action arise under federal law; (2) that the defendant is not subject to the jurisdiction of the courts of any one State; and (3) that the defendant's total contacts with the United States as a whole are sufficient to confer the Court with personal jurisdiction over the defendant without offending due process." *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 434 (S.D.N.Y.

1996); *see also Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003); *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 2024 WL 1533189, at *13 (S.D.N.Y. Apr. 8, 2024).

The parties dispute whether GPHL and GWPC satisfy these standards, so the Court addresses the allegations and factual submissions pertinent to each in turn.

### A.    GPHL

As an initial matter, the amended complaint's allegations regarding GPHL are too sparse to establish personal jurisdiction. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (explaining "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits" when assessing whether a plaintiff has made a prima facie showing of personal jurisdiction (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993))). The amended complaint avers that GPHL is a "state-owned enterprise established by, and under the administration of, the Guangzhou Municipal People's Government State-owned Assets Supervision and Administration Commission in China" and is "the controlling shareholder of defendant GBP." Dkt. No. 77 ¶ 60. Plaintiff further pleads that GPHL received the PRC Wong Lo Kat registrations "in or about 1997" before "transfer[ring] the registered marks to GBP in 2019." *Id.* ¶ 62. Finally, the amended complaint asserts that a brochure at the Grand Street Tea Museum misleadingly omitted that GPHL's intellectual property rights in the Wong Lo Kat brand "were and are limited in geographic scope, namely, to the People's Republic of China." *Id.* ¶ 88. None of those allegations identifies any activities, actions, or omissions that GPHL took in the United States—let alone the state of New York. *See Lipin v. Bergquist*, 574 F. Supp. 2d 423, 430–31 (S.D.N.Y. 2008); *Tejeda v. Reno*, 2000 WL 1280969, at *1 (S.D.N.Y. Sept. 11, 2000) ("Petitioner does not allege *any* contacts between

15

Lappin and the State of New York, much less sufficient contacts that would confer personal jurisdiction over his person." (emphasis in original)).  While Plaintiff alleges that GPHL is the parent company of GBP, this Court has previously held that it lacks personal jurisdiction over GBP, Dkt. No. 208 at 49, and that ruling is now the law of the case, *see Rhee v. SHVMS, LLC*, 2024 WL 2943696, at *3 n.2 (S.D.N.Y. June 10, 2024).  As a result, GPHL's ownership of GBP brings Plaintiff no closer to establishing personal jurisdiction.

The declaration of Yu Zhengyuan further demonstrates GPHL's lack of contacts with New York and, indeed, the United States as a whole.  "Because '[o]n a Rule 12(b)(2) motion, a defendant may submit affidavits and documents beyond the pleadings,' the Court may consider the [Yu] Declaration with respect to Defendants' Motion under Rule 12(b)(2)."  *Gentry v. Kaltner*, 2020 WL 1467358, at *5 (S.D.N.Y. Mar. 25, 2020) (quoting *Sullivan v. Walker Constr., Inc.*, 2019 WL 2008882, at *1 (S.D.N.Y. May 7, 2019) (Nathan, J.)).  According to the declaration, Yu is the deputy director of GPHL's Compliance and Legal Affairs Department. Dkt. No. 195 ¶ 1.  Yu attests that "[n]one of GPHL's members, officers, managers, or directors resides in New York."  *Id.* ¶ 5.  GPHL does not have offices or employees in New York.  *Id.* ¶¶ 6–7.  It is not registered to business in New York and does not have a registered agent in the state.  *Id.* ¶¶ 8–10.  GPHL does not advertise or pay taxes in New York.  *Id.* ¶¶ 10, 12.  Nor does GPHL own, use, or possess property in New York.  *Id.* ¶ 11.  Prior to this suit, GPHL had never been sued in state or federal court in New York.  *Id.* ¶ 14.

Yu also confirms that GPHL is the parent company of GBP, but explains that GPHL "does not manufacture, market, import, sell, or contract to supply any of the allegedly infringing products . . . to any entity or individual in New York or elsewhere in the United States."  *Id.* ¶¶ 16–17.  Additionally, GPHL did not design, approve, or review the Challenged Products'

packaging, *id.* ¶¶ 18–19, and GPHL does not control, manage, or supervise their marketing, promotion, or sale "in New York or elsewhere in the United States," *id.* ¶ 22. Neither WLJ nor Tristar is a subsidiary of GPHL. *Id.* ¶ 20. And "GPHL had no role in the formation of WLJ or Tristar, and GPHL does not control, manage, or supervise WLJ, Tristar, or their businesses." *Id.* ¶ 21.

The Yu declaration thus indicates that, like GBP, GPHL is a foreign holding company that indirectly owns relevant parties but otherwise lacks relevant contacts with New York and the remainder of the United States. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 959 F. Supp. 2d 476, 495 (S.D.N.Y. 2013) ("[M]ere ownership of a subsidiary is insufficient to justify asserting personal jurisdiction over the parent wherever the subsidiary is present."). GPHL does not operate or otherwise "transact business" in New York. *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) (summary order). Nor do WLJ and Tristar—which "carry out their own businesses" in the Challenged Products, in contrast to GPHL's "investment business," *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 274 (E.D.N.Y. 2010)—act on GPHL's behalf for purposes of personal jurisdiction. Nor does the Yu declaration describe any contacts with other parts of the United States that would satisfy Federal Rule of Civil Procedure 4(k)(2). *See Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 168 (E.D.N.Y. 2006). As a result, the Yu declaration indicates that GPHL does not have sufficient connections with New York or the United States to satisfy personal jurisdiction. *See Russell v. Titanium LLC*, 2024 WL 1580148, at *3 (N.D.N.Y. Apr. 11, 2024) ("[B]ecause Plaintiff has not provided concrete allegations establishing Defendant's connection to New York, and Defendant has submitted a declaration that provides

17

ample evidence that Defendant had no connection to New York, the Court concludes that it does not have specific personal jurisdiction pursuant to Section 302.").

But Plaintiff argues that the Court must disregard the Yu declaration because it is "contradicted by other evidence." Dkt. No. 200 at 15; *see M. Prusman, Ltd. v. Ariel Mar. Grp., Inc.*, 719 F. Supp. 214, 220 (S.D.N.Y. 1989) (disregarding documents contesting personal jurisdiction that were "contradicted . . . by other evidence in the record"); *see also McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 413 (S.D.N.Y. 2017) (same). In support of that assertion, Plaintiff submits several news articles and press releases. *See* Dkt. Nos. 201-1–201-5. According to Plaintiff, those documents evince several contacts that establish this Court's personal jurisdiction over GPHL. Dkt. No. 200 at 12–13, 18. However, the Moving Defendants retort that Plaintiff misconstrues the documents and thus misapprehends GPHL's contacts with New York and the United States. *See* Dkt. No. 204 at 3–5. The Court addresses each contact, as well as the corresponding documentary evidence, in turn.

### 1.    Tea Museums

First, Plaintiff cites two news articles describing the opening of the Grand Street Tea Museum in November 2018 to argue that GPHL has engaged in sufficient conduct in New York to satisfy Section 302(a). Dkt. No. 201-1–201-2. Plaintiff emphasizes that Chen Weiping, assistant general manager of GPHL, attended that opening. Dkt. No. 200 at 12. Plaintiff contends that Chen's presence demonstrates that GPHL was the moving force behind the Grand Street Tea Museum. *Id.* But that inference lacks evidentiary support. To the contrary, the evidence indicates that the Tea Museum's opening was a ceremonial event, such that Chen's appearance did not demonstrate GPHL's control over the operation. A press release submitted by Plaintiff describes the event as an "inauguration ceremony." Dkt. No. 145-20 at ECF p.14. And, in addition to Chen, a "New York City Councilor," "representative of [the] Museum of

18

Chinese in America," and other "people from all walks of life were present" at the event. *Id.* Chen's single appearance at a ceremonial event was therefore "the barest of contact," *E. Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 2009 WL 764458, at *5 (S.D.N.Y. Mar. 23, 2009) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 383 (1967)), and "not significant enough to confer personal jurisdiction" over GPHL, *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997).

Plaintiff asserts that two news articles demonstrate Chen's attendance "was an integral part of GPHL's *initiative to expand its presence*" in the United States. Dkt. No. 200 at 12 (emphasis in original). One article quotes Chen as stating: "Going ahead, Wang Lao Ji is expected to set up herbal tea museum in 56 cities worldwide, aiming to promote the beneficial and auspicious beverage and spread the Chinese culture globally." Dkt. No. 201-2 at ECF p.4. The other article reports that "GPHL plans to open herbal tea museums in 56 cities around the world in the future." Dkt. No. 201-1 at ECF p.2. Notably, both statements are aspirational, describing actions GPHL hoped to take in the future. Aspirations and hopes, however, are not a sufficient basis for exercising personal jurisdiction over a foreign defendant. "Personal jurisdiction cannot be based on the intent to make contact with the forum some time in the future." *Zellerino v. Roosen*, 118 F. Supp. 3d 946, 953 (E.D. Mich. 2015); *see Holland v. Cardem Ins. Co., LTD*, 2021 WL 7448018, at *14 (D.D.C. Dec. 7, 2021) ("Courts have refused to engage in such conjecture concerning an entity's future contacts when determining jurisdiction."), *report and recommendation adopted*, 2023 WL 5846673 (D.D.C. Sept. 11, 2023); *Est. of Martinez v. Yavorcik*, 455 F. Supp. 2d 115, 121 n.3 (D. Conn. 2006); *see also Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 300 (3d Cir. 1985); *Equals 3, Inc. v. S.A. Micropole*,

19

2022 WL 20302971, at *7 (D. Minn. Sept. 19, 2022).  Consequently, GPHL's interest in opening other tea museums globally, even if articulated by Chen, does not establish personal jurisdiction.

In an attempt to avoid the conclusion that GPHL's plans are too prospective to confer jurisdiction, Plaintiff emphasizes that an October 2023 press release states:  "The Wong Lo Kat New York Herbal Tea Museum has been completed and opened in 2018.  In addition, the Fifth Avenue Museum in New York, located in the central business district of Manhattan, will also open for trial operation this year."  Dkt. No. 201-5 at ECF p.3.  Like the Grand Street Tea Museum, the new museum on Fifth Avenue "combines a traditional museum with a fashionable herbal tea shop."  *Id.*  Although Plaintiff contends that this press release demonstrates "*GPHL . . . will be opening a second location in Manhattan in the near future*," Dkt. No. 200 at 13 (emphasis added), that attribution is conspicuously absent from the press release.  Rather, the press release indicates that one or more entities operating under the Wang Lao Ji brand have developed a second tea museum in New York City.  That fact does not contradict Yu's declaration that GPHL "does not own, use, or possess property in New York," and "does not manufacture, market, import, sell, or contract to supply any of the allegedly infringing products." Dkt. No. 195 ¶¶ 11, 17.  Indeed, the evidence is easily reconciled:  While one or more Wang Lao Ji entities are involved in the Fifth Avenue museum, GPHL is not.  GPHL's lack of operational involvement in the new museum is also consistent with its role as a holding company that manages investments instead of producing or selling the Challenged Products.  *See id.* ¶¶ 17, 22. Plaintiff's assertion that GPHL acted on its plan to open more tea museums around the world by opening a second museum in Manhattan therefore finds inadequate support in the evidence.  *See Kejriwal v. UCO Bank*, 2014 WL 116218, at *5 (S.D.N.Y. Jan. 10, 2014).

20

The news articles and press release Plaintiff submits show that a GPHL employee attended a ceremonial event at the Grand Street Tea Museum and that GPHL hopes to open many tea museums around the world.  But that isolated visit and forward-looking aspiration do not constitute either the transaction of business or tortious conduct in New York.  As a result, these actual and potential contacts do not create personal jurisdiction over GPHL under New York law.

### 2.    Chicago Roadshow

Next, Plaintiff argues that even if GPHL's involvement in the tea museums is insufficient to satisfy New York law, GPHL's role in the Chicago Roadshow supports personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  Dkt. No. 200 at 18.  Plaintiff provides two news articles documenting GPHL's role in that event.  Dkt. Nos. 201-3–201-4.

Those articles explain that GPHL is a "strategic partner" of the "Fortune Global Forum," a business organization that has existed since 1995 and is "known as 'the gathering of the world's richest companies and the most profitable people.'"  Dkt. No. 201-4 at ECF p.2; *see* Dkt. No. 201-3 at ECF p.2.  In 2017, the Fortune Global Forum was "to be held in Guangzhou in December."  Dkt. No. 201-4 at ECF p.3.  To promote the main event in Guangzhou, the Forum held a "Fortune Global Forum Roadshow" in Chicago in June 2017.  Dkt. No. 201-4 at ECF pp. 2–3.  As a major pharmaceutical holding company headquartered in Guangzhou, GPHL agreed to host the Chicago Roadshow.  *See* Dkt. No. 201-3 at ECF p.2.  At the Roadshow, representatives of "Fortune Global 500 companies such as Boeing and Walgreens" appeared alongside a GPHL assistant general manager at an event on "Building a Smart, Health and Environmentally Friendly Hub City."  *Id.*

GPHL's general involvement in the Chicago Roadshow is irrelevant to Plaintiff's assertion of personal jurisdiction here because Plaintiff argues that the Court has *specific*, rather

21

than *general*, personal jurisdiction over GPHL.  To support specific jurisdiction, GPHL's "contacts [with the United States] must be related to Plaintiff's claims." *Sharbat v. Iovance Biotherapeutics, Inc.*, 2021 WL 1164717, at *7 (S.D.N.Y. Mar. 26, 2021); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 341 (2d Cir. 2016).  Neither hosting a business conference in Chicago nor discussing economically prudent urban development with corporate executives bears any relationship to Plaintiff's claims regarding the Challenged Products.  "As such, these contacts are not relevant to [the] specific jurisdiction analysis." *Preussag Int'l Steel Corp. v. Ideal Steel & Builders' Supplies, Inc.*, 2004 WL 783102, at *4 (N.D. Ill. Jan. 21, 2004); *see also Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 60 F. Supp. 3d 21, 31 (D.D.C. 2014).

Instead, the Court must consider only those aspects of the Chicago Roadshow related to Plaintiff's claims in this lawsuit.  Plaintiff identifies three.  First, Plaintiff asserts that GPHL "promoted the Infringing Products" at the conference.  Dkt. No. 200 at 18.  But Plaintiff improperly conflates GPHL with its separate corporate affiliates.  The news articles state that "Wanglaoji, a brand under GPHL, also appeared on the road show and held an exchange meeting with the theme of 'Chinese Herbal Tea Culture and Wanglaoji's American Market.'"  Dkt. No. 201-3 at ECF p.2; *see also* Dkt. No. 201-4 at ECF p.2.  Neither article suggests that GPHL organized or even attended that meeting.  Instead, in describing the Wanglaoji event, one article quotes "Weng Shaoquan, general manager of Guangzhou Wanglaoji Great Health Industry Co., Ltd.," as stating:  "In the international market, Wanglaoji will be position as a driving-type mid-to-high-end beverage brand, establish a long-term core competitiveness, and make Wanglaoji the most popular health beverage globally."  Dkt. No. 201-4 at ECF p.3.  The evidence therefore

22

indicates that Great Health Industry put on the Wanglaoji event, not GPHL.[3]  As Plaintiff does

not argue, much less show, that Great Health Industry acted as GPHL's agent when hosting the

meeting, the Court cannot attribute Great Health Industry's actions at the Chicago Roadshow to

GPHL.  *See Gundlach v. IBM Japan, Ltd.*, 983 F. Supp. 2d 389, 394 n.3 (S.D.N.Y. 2013), *aff'd*

*sub nom. Gundlach v. Int'l Bus. Machs. Inc.*, 594 F. App'x 8 (2d Cir. 2014).

Second, Plaintiff notes that one article mentions GPHL's strategy for international

growth.  Dkt. No. 200 at 18.  It states:  "Under the promotion of GPHL's internationalization

strategy, Wanglaoji herbal tea, Baiyunshan Jinge, Huatuo Zaizao pills and other famous products

have gone abroad and continued to enter the world."  Dkt. No. 201-3 at ECF p.2.  That reference

is unremarkable, however, as it reflects GPHL's role as an international holding company.  "The

business of a holding company is . . . the business of investment."  *Minner v. Navient Corp.*,

2020 WL 906628, at *5 (W.D.N.Y. Feb. 25, 2020).  As GPHL's portfolio includes

internationally popular consumer brands, one would expect its investment strategy to aim for

those products to achieve greater penetration of foreign markets.  Yet investing with an eye to

international growth does not entail "manufactur[ing], market[ing], import[ing], sell[ing], or

contract[ing] to supply" the Challenged Products in the United States.  Dkt. No. 195 ¶ 17.

Consequently, the article's description of GPHL's corporate strategy does not conflict with the

Yu declaration.

---

[3] Similarly, Plaintiff contends that the articles show that GPHL appeared "in New York."
Dkt. No. 200 at 5.  While the articles contain grammatical errors, they are best read as stating
that "*Wanglaoji* . . . appeared in Times Square in New York."  Dkt. No. 201-3 at ECF p.2
(emphasis added); Dkt. No. 201-4 at ECF p.2 (same).  That interpretation also accords with other
evidence indicating that Great Health Industry, not GPHL, was responsible for the Times Square
advertisements.  *See* Dkt. No. 208 at 33.

Third, Plaintiff argues that GPHL used the Chicago Roadshow to market the Challenged Products "as 'Wang Lao Ji Herbal Tea became the exclusive official drink for [the Chicago] Fortune Global Forum.'"  Dkt. No. 200 at 7 (alteration in original) (quoting Dkt. No. 148-9 at ECF p.14).  But Plaintiff's two-word alteration distorts the underlying quotation, which derives from GBP's 2017 Annual Report.  That report announced that "Wang Lao Ji Herbal Tea became the exclusive official drink for Fortune Global Forum."  Dkt. No. 148-9 at ECF p.14.  One of the news articles on the Chicago Roadshow likewise characterizes Wang Lao Ji as "the official designated herbal tea of the 2017 Fortune Global Forum."  Dkt. No. 201-4 at ECF p.3.  The subtle distinction is crucial:  Whereas "the 2017 Fortune Global Forum *Roadshow* was held in Chicago," Dkt. No. 201-3 at ECF p.2 (emphasis added), the "2017 Fortune Global Forum" was "held in Guangzhou," Dkt. No. 201-4 at ECF p.3.  Accordingly, even assuming GPHL (rather than an affiliate) made Wang Lao Ji tea the conference's official beverage, that conference was in the PRC, not the United States.  GPHL's promotion of the Challenged Products at a conference in China does not qualify as a contact with the United States under Federal Rule of Civil Procedure 4(k)(2).

Thus, while GPHL hosted the Chicago Roadshow in the United States, the news reports Plaintiff offers do not describe any suit-related conduct by GPHL at that conference that supports an exercise of specific jurisdiction.

### 3.     North America Tour

The final document that Plaintiff contends belies Yu's declaration and establishes personal jurisdiction over GPHL under Rule 4(k)(2) is an October 2023 press release describing an eleven-day trip that several representatives of GPHL—including its chairman and executive deputy general manager—and its corporate affiliates took to the United States and Canada. Dkt. No. 200 at 7–9.

24

As the press release states, "GPHL and its delegation traveled day and night, going deep into multiple Chinese communities in both countries, and conducted close exchanges with many companies to discuss further cooperation and accelerate overseas market development." Dkt. No. 201-5 at ECF p.2.  The purpose of the tour was "to inspect the overseas sales of GPHL products such as Wanglaoji." *Id.*  The press release therefore indicates that the senior officers of GPHL did not spend the tour marketing or selling the Challenged Products or supervising or managing the marketing or sale of those products, but rather conducting market research into the performance of an important brand in GPHL's investment portfolio.  As a result, the tour does not contradict the Yu declaration and was too attenuated from Plaintiff's claims to support specific personal jurisdiction.  *See Hannah v. Johnson & Johnson Inc.*, 2020 WL 3497010, at *22 (D.N.J. June 29, 2020) (holding market research in the forum state did not establish personal jurisdiction); *see also Elec. & Gas Tech., Inc. v. Universal Commc'n Sys., Inc.*, 2003 WL 22838719, at *5 (N.D. Tex. Nov. 24, 2003) (ruling a single "due diligence" trip to the forum did not confer personal jurisdiction).  Nor does the tour provide a basis for attributing the actions of indirect subsidiaries to GPHL, since the corporate representatives' actions comported with the role of a separate holding company managing its investments.  *See Gallelli*, 701 F. Supp. 2d at 274.

While Plaintiff analogizes to *In re Aluminum Warehousing Antitrust Litigation*, 2020 WL 2036716 (S.D.N.Y. Apr. 28, 2020), the trip the court deemed sufficient to satisfy personal jurisdiction there was far from an ordinary market research trip by a foreign holding company. Instead, to promote an anti-competitive conspiracy, a foreign company's representative travelled to the United States and instructed employees of its American subsidiary on how to reduce the outflow of aluminum from its warehouses in order to inflate the commodity's price.  *Id.* at *14.

25

The district court therefore concluded that the representative had engaged in "significant suit-related conduct . . . furthering defendants' alleged antitrust conspiracy." *Id.*

By contrast, none of the GPHL representative on the North America tour engaged in the misconduct alleged in the amended complaint or directed any corporate affiliates to do so. Plaintiff briefly suggests otherwise, asserting that the GPHL delegation "visited its West Coast distributor, OCM Globe, Inc." Dkt. No. 200 at 8. Yet the press release Plaintiff submits to support that allegation remarks merely that "GPHL and its delegation . . . conducted exchanges with OCM Huayuan Food Company in Los Angeles." Dkt. No. 201-5 at ECF p.4. The release does not describe any distribution relationship between OCM and GPHL. "A party may not 'rely on the unsworn statements in his memorandum of law in order to make a *prima facie* showing of personal jurisdiction,'" *Tam v. MIH CP Sols., LLC*, 2022 WL 17415088, at *3 (E.D.N.Y. Dec. 5, 2022) (quoting *Guo Jin v. EBI, Inc.*, 2008 WL 896192, at *2 n.2 (E.D.N.Y. Mar. 31, 2008)), so Plaintiff's bare assertion that GPHL met with its U.S.-based food distributor fails to undermine Yu's declaration that "GPHL does not . . . sell, or contract to supply any of the allegedly infringing products . . . to any entity or individual in New York or elsewhere in the United States," Dkt. No. 195 ¶ 17.

Plaintiff also contends that the press release regarding the North America tour reveals that "[GPHL] has entered online platforms such as yamibuy, wee, and Amazon, and offline has entered supermarket chains such as Hmart" and "the mainstream channel Costco in the United States." Dkt. No. 200 at 8–9 (alteration in original) (quoting Dkt. No. 201-5 at ECF p.2). Once again, however, Plaintiff's slight alteration of a quotation drastically overstates GPHL's role. The language Plaintiff quotes appears in a paragraph describing the GPHL delegation's findings

on the current state of the U.S. market for Wang Lao Ji tea.  *See* Dkt. No. 201-5 at ECF p.2.

That paragraph reports:

> As a key strategic export market for Wonglaoji, the U.S. market has experienced significant annual sales growth since *its* export in 2013, with the Chinese market reaching 90%.  At present, *it* has entered online platforms such as yamibuy, wee, and Amazon, and offline has entered supermarket chains such as Hmart.  This year, *it* also official entered the mainstream channel Costco in the United States.

*Id.* (emphasis added).  Read in context, the repeated use of "it" clearly refers to Wang Lao Ji tea rather than GPHL.  Without any suggestion that GPHL distributed or managed the distribution of the Challenged Products through online or brick-and-mortar retail outlets, the press release instead demonstrates that one of GPHL's affiliates has offered the Challenged Products through those sales channels.  Because Plaintiff has neither identified that affiliate nor explained how its actions are attributable to GPHL, the sale of Wang Lao Ji in U.S. stores does not support personal jurisdiction.

Finally, Plaintiff directs the Court to the press release's concluding sentence, Dkt. No. 200 at 4, which states:  "In the future, GPHL will continue to promote Wong Lao Kat to further cover overseas local markets, allowing the world to share healthy plant drinks from China."  Dkt. No. 201-5 at ECF p.4.  As a general statement following specific descriptions of the GPHL delegation's tour of North America, that sentence relays GPHL's intent to continue monitoring its investments and searching for favorable market conditions abroad.  *Cf. Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2082–83 (2024).  That statement not only announces intended *future* contacts, which are insufficient to establish personal jurisdiction, but also fails to disclose where those contacts will occur "overseas."  Dkt. No. 201-5 at ECF p.4; *see CXENSE Inc. v. Maroniene*, 2017 WL 3131987, at *6 (D. Mass. Jan. 4, 2017) (concluding "vague" statements on a website were insufficient to establish personal jurisdiction over foreign

27

defendants).  The mere possibility that GPHL will conduct future diligence trips somewhere outside China does not constitute a contact with the United States for purposes of Rule 4(k)(2).

Thus, the press release regarding the North American tour does not contradict Yu's declaration or describe contacts with the United States sufficient to furnish personal jurisdiction over GPHL.

Considering GPHL's relevant contacts in their totality, the Court concludes that GPHL does not have sufficient ties to New York or the United States to satisfy either Section 302(a) or Rule 4(k)(2).  GPHL therefore must be dismissed from this case.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" (quoting *Emps. Reins. Corp. v. Bryant*, 299 U.S. 374, 382 (1937))).

### B.    GWPC

In contrast to the several documents and specific actions Plaintiff relies upon in seeking to establish personal jurisdiction over GPHL, Plaintiff's arguments regarding GWPC are confined to a few statements in GBP's 2020 annual report.  Dkt. No. 200 at 13–15.  The Moving Defendants retort that Plaintiff misinterprets those disclosures, as they "refute[]" Plaintiff's assertions.  Dkt. No. 204 at 8.

The amended complaint includes just two allegations regarding GWPC:  First, GWPC "is a Chinese limited company" with its principal place of business in Guangzhou.  Dkt. No. 77 ¶ 12.  Second, "[u]pon information and belief," GWPC is one of the "direct and indirect subsidiaries" of GBP that is "involved" in "advertising, promoting, offering for sale, and selling herbal tea and related products under the Wong Lo Kat brand."  *Id.* ¶ 64.  As neither allegation describes any activities in New York or elsewhere in the United States, the amended complaint plainly fails to allege sufficient contacts to support personal jurisdiction over GWPC.

28

Moreover, "Defendants speak where the complaint is silent," *SK's Cosm. Boutique Inc. v. J.R. Silverberg Realty, LLC*, 2020 WL 3451324, at *4 (S.D.N.Y. June 24, 2020), by submitting the declaration of Chen Xiangsheng, Dkt. No. 196.  Chen, who is the manager of GWPC's department of legal affairs, attests that GWPC is a Chinese limited company headquartered in Guangzhou.  *Id.* ¶¶ 1, 3–4.  Chen states that "[n]one of GWPC's members, officers, managers, or directors resides in New York."  *Id.* ¶ 5.  GWPC does not have offices or employees in New York.  *Id.* ¶¶ 6–7.  GWPC is not licensed or registered to do business in New York, and it does not have a registered agent in the state.  *Id.* ¶¶ 8–9.  GWPC does not advertise in New York.  *Id.* ¶ 11.  It does not own, use, or possess property in New York, or pay taxes in New York.  *Id.* ¶¶ 10, 12.  Prior to this case, GWPC has never been a party to a lawsuit in state or federal court in New York.  *Id.* ¶¶ 13–15.

Although GWPC is a subsidiary of GBP, *id.* ¶ 16, Chen declares that GWPC "does not manufacture, market, import, sell, or contract to supply any of the [Challenged Products] . . . to any entity or individual in New York or elsewhere in the United States," including WLJ, *id.* ¶ 17.  Chen further states that GWPC did not design, review, or approve the allegedly infringing packaging described in the amended complaint.  *Id.* ¶¶ 18–19.  Finally, GWPC is not the parent company of either WLJ or Tristar, "and GWPC does not control, manage, or supervise WLJ, Tristar, or their businesses."  *Id.* ¶¶ 20–21.

The Chen declaration thus demonstrates GWPC's lack of relevant contacts with the forum.  Chen's statements indicate that GWPC does not transact business in New York and does not sell or advertise the Challenged Products anywhere in the United States.  *See Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1066 (E.D. Cal. 2020).  Chen's declaration does not provide a basis for treating any other Defendant as GPHL's agent for purposes of personal

29

jurisdiction. *See Fagan v. Republic of Austria*, 2011 WL 1197677, at *18 (S.D.N.Y. Mar. 25, 2011).

Yet Plaintiff responds that, like the Yu declaration, Chen's declaration must be disregarded because its contents are "almost entirely contradicted by available evidence." Dkt. No. 200 at 16.  Plaintiff emphasizes that GBP's 2020 Annual Report, which refers to GWPC as "Wang Lao Ji," Dkt. No. 148-1 at 4, states:

> The Great Health Industry segment of the Group [i.e., GBP and its subsidiaries] mainly engaged in the production, R&D, and sale of beverage, food, healthcare product and etc., including the subsidiaries, WLJ Great Health and Wang Lao Ji, and the main products include Wang Lao Ji Herbal Tea, Ci Ning Ji series, Ganoderma spore oil capsules, lozenges, tortoise herb jelly, etc.

*Id.* at 16.  Plaintiff argues that "[b]ecause GWPC is 'responsible for' the Infringing Products, including their 'production' and 'sale,' GWPC is involved in the New York market."  Dkt. No. 200 at 13.  The annual report indeed shows that GWPC has *some* role in the production, development, or sale of several products, including the Challenged Products.  But it does not indicate that GWPC is involved in every step of the supply chain for all of the listed products everywhere they are sold.  As a result, Plaintiff's inference that GWPC is necessarily responsible for the Challenged Products advertised and sold in New York—or, for that matter, the United States—is unsupported.[4]  The report's statement that GWPC manufactures or sells the Challenged Products somewhere does not contradict Chen's assertion that GWPC does not perform any of those tasks for "any entity or individual in New York or elsewhere in the United States."  Dkt. No. 196 ¶ 17.

---

[4] That same logical error underlies Plaintiff's contention that it would be "inconsistent" for the Court to conclude that "GWPC does not target the United States directly through the sales of the Infringing Products in the United States," Dkt. No. 17 n.4, after finding in its prior Opinion and Order that "WLJ Great Health and Wang Jao Li are responsible for the products Wang Jao Li Herbal Tea," Dkt. No. 208 at 17.

Plaintiff also relies on a paragraph in the annual report describing the sales model for the Challenged Products:

> For sales of Wang Lao Ji herbal tea, WLJ Great Health and Wang Lao Ji mainly depend on distributorship by setting three tiers of distributors. The first-tier distributors are directly responsible to WLJ Great Health and Wang Lao Ji, and took respective responsibilities for regional channel development as per the marketing tasks given by WLJ Great Health and Wang Lao Ji. The second-tier shall purchase products from the first-tier distributors and be responsible for distribution and dispatching. WLJ Great Health and Wang Lao Ji shall directly be responsible for the products' advertisement investment, and participate in terminal expansion, promotion and customer maintenance, etc.

Dkt. No. 148-1 at 19. According to Plaintiff, under this distribution system, GWPC was responsible for sales of the Challenged Products in the United States, including sales by Tristar in New York. Dkt. No. 200 at 14. The problem with Plaintiff's theory, however, is that the annual report reveals that sales of the Challenged Products are organized into several "regional channel[s]." Dkt. No. 148-1 at 19. Yet the annual report does not enumerate the regional channels that GWPC and Great Health Industry respectively oversee. As a result, the annual report does not support the conclusion that GWPC is responsible for sales in New York or elsewhere in the United States.

Other jurisdictional discovery indicates that Great Health Industry, not GWPC, supervises distribution in New York and the rest of the eastern United States. In 2014, Great Health Industry entered into an agreement with Tristar conferring "general agency in the east of USA" for the Challenged Products. Dkt. No. 149-9 at ECF p.3. And, in 2017, Great Health Industry entered into a "Cooperation Agreement on Agency Sales of Wang Lao Ji Herbal Tea" with Tristar, permitting Tristar to sell the Challenged Products "in the eastern region of the United States as an agent of [Great Health Industry.]"[5] Dkt. No. 149-7 at ECF p.9. Notably,

---

[5] In more recent agreements with Tristar, Guangzhou Wang Lao Ji Great Health Enterprise Development Co., Ltd. has replaced Great Health Industry. *See* Dkt. Nos. 149-6, 149-8. But

31

GWPC is not a party to either agreement, suggesting that New York falls within Great Health Industry's regional channel rather than GWPC's.  As these documents show Tristar acted, at least for a period, as Great Health Industry's agent in selling the Challenged Products, they undermine Plaintiff's assertion that Tristar was GWPC's agent.  *See Reliance First Cap., LLC v. Mid Am. Mortg., Inc.*, 2019 WL 2504039, at \*11 (E.D.N.Y. June 17, 2019) (concluding defendant's evidence "refutes any agency relationship" for purposes of personal jurisdiction).

GBP's annual report establishes that GWPC is involved in manufacturing, development, or sales of the Challenged Products.  But those products are sold internationally.  Dkt. No. 201-5 at ECF p.3 (noting Wang Lao Ji tea is sold "in Southeast Asia, North America, Australia, and other markets").  And the annual report does not state that GWPC engages in those commercial activities for purposes of a regional channel in the United States.  Consequently, Plaintiff has "failed to provide counter-evidence that is directly conflicting" with the Chen declaration. *EcoMed, LLC v. Asahi Kasei Med. Co.*, 2018 WL 6620313, at \*9 (S.D. Fla. Oct. 31, 2018), *report and recommendation adopted*, 2018 WL 6620467 (S.D. Fla. Nov. 28, 2018).  Chen's attestation that GWPC does not manufacture, market, import, sell, or contract to sell the Challenged Goods to any person in the United States thus controls.  Dkt. No. 196 ¶ 17.

Plaintiff's alternative argument that the Court can exercise personal jurisdiction over GWPC based on its "contributory infringement," Dkt. No. 200 at 14, suffers from the same fatal flaw.  "Under [a] contributory infringement theory, a non-domiciliary manufacturer or distributor may be subject to personal jurisdiction upon a showing that it sold a product to an importer . . . with full knowledge that the product will or can reasonably be expected to be resold in the

---

Plaintiff makes no attempt to explain why Guangzhou Wang Lao Ji Great Health Enterprise Development Co., Ltd. should be considered GWPC's agent.

jurisdiction, where it will infringe the plaintiff's mark." *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 91 (S.D.N.Y. 1997); *see also Blakeman v. Walt Disney Co.*, 613 F. Supp. 2d 288, 302 (E.D.N.Y. 2009) (Bianco, J.).  As explained above, Plaintiff has not put forward any evidence suggesting that GWPC sold the Challenged Products to importers for resale in the United States, let alone that it did so knowingly.  *See Byun v. Amuro*, 2011 WL 10895122, at *5 (S.D.N.Y. Sept. 6, 2011) ("Plaintiff has . . . no[t] alleged facts suggesting that Defendants sold the [challenged product] to an importer with full knowledge that it would be resold in New York.").  Plaintiff's contributory infringement theory therefore fails to fill the gap in its jurisdictional discovery.

GBP's 2020 annual report simply cannot bear the weight Plaintiff places on it.  Although the report indicates that GWPC has participated in the production and distribution of the Challenged Products, the report does not describe any acts GWPC has taken with respect to the United States.  Consequently, the report is ultimately consistent with Chen's description of GWPC's lack of relevant contacts with New York or any other state.  Without those contacts, this Court cannot exercise personal jurisdiction over GWPC.

*     *     *

As Plaintiff has not made a factually supported prima facie showing of personal jurisdiction over GPHL or GWPC for purposes of either Section 302(a) or Rule 4(k)(2), the Court grants the Moving Defendants' motion and dismisses all claims against them.[6]

---

[6] Because the Court concludes that there is no basis for personal jurisdiction over GPHL under Section 302(a) or Rule 4(k)(2), the Court "need not decide whether exercising such jurisdiction would comport with constitutional due process." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 73 (2d Cir. 2023).

33

## II.    Motion to Dismiss the Counterclaims

Plaintiff contends that WLJ and Tristar's first, second, and third counterclaims must be dismissed, as the allegations underlying these claims do not satisfy Federal Rule of Civil Procedure 9(b)'s requirement that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see* Dkt. No. 216 at 6, 8. Counterclaimants respond that the amended answer "includes more than enough detail" and, in any event, Rule 9(b) does not mean a party fails to "plead fraud unless it already knows every surrounding detail, even facts that can only be discerned through discovery."  Dkt. No. 217 at 1.

The Lanham Act authorizes "any person who believes that he is or will be damaged" to file a "petition to cancel a registration of a mark" for which "registration was obtained fraudulently."  15 U.S.C. § 1064(3); *see also* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancel[l]ation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.").  "Fraud in procuring a trademark registration . . . occurs when an applicant knowingly makes false, material representations of fact in connection with his application."  *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016) (alteration in original) (quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)).  "A third party seeking cancellation of a trademark based upon fraud in the application 'bears a heavy burden.'"  *Quality Serv. Grp. v. LJMJR Corp.*, 831 F. Supp. 2d 705, 710 (S.D.N.Y. 2011) (quoting *In re Bose Corp.*, 580 F.3d at 1243).  "The allegedly fraudulent statements may not be the product of mere error or inadvertence, but must indicate a 'deliberate attempt to mislead the [PTO].'  Moreover, the knowing misstatement must have been with respect to a *material* fact—one that would have affected the PTO's action on the applications." *Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988)

34

(alteration and emphasis in original) (quoting *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982)).

Allegations that a trademark registration was obtained through fraud are subject to the heightened pleading standards of Rule 9(b).  *See Kaszuba v. Iancu*, 823 F. App'x 973, 979 (Fed. Cir. 2020); *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 480 (S.D.N.Y. 2017); *see also GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 243 (S.D.N.Y. 2000) (Chin, J.).  To plead a misrepresentation under those standards, parties "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."  *Cambridge Cap. LLC v. Ruby Has LLC*, 2022 WL 2292817, at *4 (S.D.N.Y. June 24, 2022) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).  Additionally, under Rule 9(b), allegations of fraud may be pleaded on "information and belief" as to "matters peculiarly within the opposing part's knowledge," but only if those allegations are "accompanied by a statement of the facts upon which the belief is founded."  *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986) (internal quotation marks omitted); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009); *SEC v. Watson*, 659 F. Supp. 3d 409, 414 (S.D.N.Y. 2023); *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 451 (S.D.N.Y. 2007).

Counterclaims One, Two, and Three fall short of these standards.  Specifically, all three fail to adequately plead a basic element of fraud claims: "a false statement or omission."  *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013).

A.      **Counterclaims One and Two**

Counterclaimants' first two counterclaims rest on a paltry mélange of unsupported allegations made on information and belief and impermissible speculation.[7]  The Court addresses those counterclaims together, as they reflect closely related theories:  Counterclaim One asserts that Plaintiff obtained the '908 Registration through fraud by misrepresenting that it "had used the underlying trademark in U.S. commerce . . . despite knowledge that unlicensed third parties—and not [Plaintiff] itself—were using the mark in U.S. commerce."  Dkt. No. 213 at 54.  Similarly, Counterclaim Two avers that Plaintiff obtained the '844 Registration through fraud by misrepresenting that "it had a *bona fide* intent to use the underlying trademark in U.S. commerce . . . despite knowledge that unlicensed third parties—and not [Plaintiff] itself—would be using the mark in U.S. commerce."  *Id.* at 55.[8]

The amended answer includes conclusory assertions that Plaintiff's "misrepresentation[s] to the USPTO w[ere] knowingly and willfully fraudulent" and constituted "material misrepresentation[s]," such that Plaintiff "fraudulently obtained" the '904 and '844 registrations.  *Id.* 50–51.  However, the Court must disregard those "[t]hreadbare recitals of the elements," as the Court cannot credit "a legal conclusion couched as a factual allegation" when ruling on a

---

[7] The parties dispute whether altering the orientation of the Wong Lo Kat characters could confuse American consumers, Dkt. Nos. 216 at 6, 217 at 7, but neither Plaintiff nor Counterclaimants articulates the relevance of that potential confusion for the fraud theories in the first three counterclaims, *cf.* Dkt. No. 213 ¶ 26 ("[T]o the extent Counterclaim-Defendant MAL and/or lawful licensees have used Counterclaim-Defendant's WONGLOKAT Design Mark in U.S. commerce in connection with herbal tea beverages or related products, this mark was used in a manner that did not uniquely identify Counterclaim-Defendant as the source of such products.").

[8] "Priority of use is a critical issue in many trademark disputes.  The party who can prove it was first to use becomes the owner of a valuable trademark right.  Falsifying or fabricating documents to create a false record of prior use can be a ground for [cancelling a trademark]."  2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:1 (5th ed. 2024).  But a licensor can rely on a licensee's use to establish priority because "a licensee's use of the mark inures to the benefit of the licensor."  *Id.* § 18:38; *see* 15 U.S.C. § 1055.

36

motion to dismiss for failure to state a claim. *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (citations omitted).

Counterclaimants' allegations "[u]pon information and belief" that "unlicensed or improperly licensed third parties—and not [Plaintiff] itself—were using the mark in U.S. commerce" and "would be using the mark in U.S. commerce" fare no better. Dkt. No. 213 ¶¶ 29, 33; *see also id.* ¶ 22. Even if those facts are peculiarly within Plaintiff's knowledge, Counterclaimants' "allegations [still] fail under Fed. R. Civ. P. 9(b) because they are made upon 'information and belief' and do not identify with particularity the facts upon which the belief is founded." *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991). The amended answer's only remotely concrete allegation regarding Plaintiff's licenses, or lack thereof, is:

> [T]he specimen of use [Plaintiff] filed in connection with the '844 Registration identifies the herbal drink as "Supervised by: JBD Hangzhou Limited," "Manufacture[d]" by "Pokka Ace (M) Sdn. Bhd,"[] and "Distribut[ed]" in the U.S. by "Win Luck Trading Inc." on the rear of the can, and it is not clear who these parties are or how, if at all, they are under appropriate agreements with Counterclaim-Defendant.

Dkt. No. 213 ¶ 23. But the possibility that those entities *could* lack licensing agreements with Plaintiff is simply too "speculative" to plead that Plaintiff misrepresented unlicensed uses of its trademarks to the USPTO. *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 555); *see A.V.E.L.A.*, 241 F. Supp. 3d at 480 (explaining allegations of fraud on the USPTO require more than "speculation, conjecture, or surmise" (quoting *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, 440 F. Supp. 2d 249, 267 (S.D.N.Y. 2006))). At most, the involvement of other companies in the production and distribution of the '844 specimen is "merely consistent" with third parties using Plaintiff's trademarks, but such allegations "do not plausibly suggest" that the third parties' use was unlicensed. *In re Watson Lab'ys, Inc.*, 101 F.4th 223, 235 (2d Cir. 2024). Thus, counterclaimants' "naked allegation[s]"

37

that Plaintiff's statements to the USPTO were false because of unlicensed uses are "insufficient" to state a claim. *In re Renewable Energy Grp. Sec. Litig.*, 2022 WL 14206678, at \*5 n.5 (2d Cir. Oct. 25, 2022) (summary order).

Counterclaimants' assertions that discovery is "likely to show" unlicensed uses of Plaintiff's trademarks are also unavailing. Dkt. No. 213 ¶¶ 29, 33. "As the Supreme Court has emphasized, a plaintiff must allege facts supporting a plausible claim *before* being entitled to discovery." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022) (emphasis in original) (citing *Iqbal*, 556 U.S. at 678–79). Accordingly, the relevant inquiry "is whether the [amended answer] states a plausible claim, not whether [Counterclaimants] might be able to state a plausible claim at some future time as a result of conducting discovery." *Agostini v. Backus*, 2015 WL 1579288, at \*4 (W.D.N.Y. Apr. 9, 2015).

Ultimately, Counterclaims One and Two bear a striking resemblance to the trademark-fraud counterclaim that failed to state a claim in *Kash N' Gold, Ltd. v. Samhill Corp.*, 1990 WL 196089, at \*3 (S.D.N.Y. Nov. 29, 1990). The defendant in *Kash N' Gold* sought to invalidate the plaintiff's trademark on the grounds that plaintiff had "falsely and/or fraudulenty [sic] avered [sic] that it had the exclusive right to the [challenged] mark in the United States and/or that no other entity had such rights" but "[i]n light of the prior use of the [challenged] mark by others, such statements were false and, upon information and belief, were known to be false by counterclaim defendant at the time they were made." 1990 WL 196089, at \*2. The Court held those allegations were insufficient under Rule 9(b), reasoning that the answer "only contain[ed] the general allegations that unidentified third parties had been using the [challenged] trademark prior to the plaintiff's use." *Id.* Yet "[t]here are no names, no dates, no details which would provide the particulars demanded by the rule." *Id.* The same is true here. Counterclaimants

38

assert that unnamed third parties were using Plaintiff's marks without valid licenses; however, the amended answer is bereft of specifics. Thus, just like the counterclaim in *Kash N' Gold*, Counterclaims One and Two fail to satisfy Rule 9(b) and must be dismissed accordingly. *See id.* at *3.

### B.   Counterclaim Three

Counterclaim Three likewise fails to state a claim because the amended answer does not adequately plead a falsehood. That claim alleges that after the USPTO suspended the '844 Registration, Plaintiff "submitted to the USPTO a purported copy of a foreign registration previously filed in the European Community," which Plaintiff represented was its "country of origin." Dkt. No. 213 at 52. That statement was false, according to the amended answer, because Plaintiff's "true country of origin is the [British] Virgin Islands, where it is a national." *Id.* at 53. As the USPTO relied on that misrepresentation in granting the '844 registration, Plaintiff "fraudulently obtained the '884 registration." *Id.*

The Court must look past the amended answer's "conclusory assertions" that Plaintiff misrepresented its country of origin by providing an EU registration. *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, 2023 WL 3569068, at *9 (S.D.N.Y. May 19, 2023); *see In re Health Mgmt. Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *5 (S.D.N.Y. June 1, 1998) ("[A] conclusory allegation that the opposite of a statement . . . is true, without further factual elaboration, is insufficient."). Nor can the Court "accept as true [the] legal conclusion," *SEC v. Stubos*, 634 F. Supp. 3d 174, 185 (S.D.N.Y. 2022), that the British Virgin Islands are Plaintiff's "country of origin" for purposes of the Lanham Act, 15 U.S.C. § 1126(c).

Section 1126(c) defines an applicant's "the country of origin" as:

[T]he country in which he has a bona fide and effective industrial or commercial establishment, or if he has not such an establishment the country in which he is domiciled, or if he has not a domicile in any of the countries described in subsection

(b) of this section [i.e., those with whom the United States has a reciprocal trademark treaty], the country of which he is a national.

15 U.S.C. § 1126(c). By its plain terms, Section 1126(c) sets forth a sequential, three-part inquiry for determining one's country of origin. *See In Re Int'l Barrier Corp.*, 231 U.S.P.Q. 310 (T.T.A.B. July 25, 1986) ("That evaluation follows a hierarchical, alternative analysis."); *see also Kallamni v. Khan*, 101 U.S.P.Q.2d 1864 (T.T.A.B. 2012). First, any country in which the applicant has "a bona fide and effective industrial or commercial establishment" can constitute its country of origin. 15 U.S.C. § 1126(c); *see* 4 McCarthy, *McCarthy on Trademarks and Unfair Competition* § 29:18 ("[A]n applicant can have more than one 'country of origin' by having a 'bona fide and effective industrial or commercial establishment' in more than one nation."); *cf.* 15 U.S.C. § 1127("Words used in the singular include the plural."). Second, if the applicant lacks a bona fide and effective industrial or commercial establishment, then the applicant's domicile is its country of origin. 15 U.S.C. § 1126(c). Finally, if the applicant's domicile lacks a reciprocal trademark treaty with the United States, then the applicant's nationality dictates its country of origin. 15 U.S.C. § 1126(b)–(c).

The amended answer flips the Lanham Act's sequential inquiry on its head. Counterclaimants' sole factual allegation regarding Plaintiff's "true country of origin" is that Plaintiff is "a national" of the British Virgin Islands. Dkt. No. 213 at 53. But nationality provides a country of origin of last, not first, resort. *See* 15 U.S.C. § 1126(c). "A corporate applicant's 'country of origin' does not have to be the applicant's country of incorporation if the applicant has a bona fide commercial establishment elsewhere." *Karsten Mfg. Corp. v. Editoy AG*, 79 U.S.P.Q.2d 1783 (T.T.A.B. 2006). Because the amended answer does not include any allegations regarding whether Plaintiff has a bona fide and effective industrial or commercial establishment in the EU, Counterclaimants have not adequately pleaded that Plaintiff's

40

representation of its country of origin was false for purposes of Rule 9(b). *See Yoomi Babytech, Inc. v. Anvyl, Inc.*, 2021 WL 4332258, at *12 (S.D.N.Y. Sept. 22, 2021) ("Under the enhanced pleading standards of Rule 9(b), plaintiffs 'must not only allege that the content is false, but they must demonstrate with specificity why and how that is so.'"). Thus, Counterclaim Three must be dismissed.

\*       \*       \*

The amended answer does not adequately plead a misrepresentation under Rule 9(b), so Counterclaims One, Two, and Three fail to state claims for trademark fraud. Plaintiff's motion to dismiss those counterclaims is therefore granted, and each is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the motion of GPHL and GWPC to dismiss the claims against them for lack of personal jurisdiction, Dkt. No. 193, is GRANTED. Plaintiff's motion at Dkt. No. 211 is DENIED as moot. Plaintiff's motion to dismiss Counterclaims One, Two, Three of WLJ and Tristar's amended answer, Dkt. No. 214, is GRANTED.

SO ORDERED.

Dated: July 22, 2024
      New York, New York
                                   _____
                                        LEWIS J. LIMAN
                                   United States District Judge

41